Argued and submitted May 3, 1985, reversed and remanded April 16, 1986

BANKS,
*Appellant,*

*v.*

MARTIN et al,
*Respondents.*

(A8006-03458; CA A32876)

717 P2d 1192

Richard A. Weill, Portland, argued the cause for appellant. With him on the briefs was Gary M. Bullock, Portland.

Cynthia S.C. Shanahan, Portland, argued the cause for respondent The Realty Group, Inc. With her on the brief were Erich H. Hoffmann and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

No appearance for respondent Lorne Martin.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff appeals from judgment in favor of Martin and The Realty Group, Inc. (Realty), defendants[1] in an action for damages for violation of the Unfair Trade Practices Act, ORS 646.608-.656, and for common law fraud. Plaintiff assigns as errors the granting of Realty's motion for a directed verdict and the decision taking from the jury her claim that the representation that property was "remodeled" was fraudulent. We agree that the trial court erred in each of those rulings and, therefore, reverse.

In 1978, plaintiff was looking for a home in Portland in the $18,000-$25,000 range. She was aware that in that price range homes were mainly "fixer-uppers." In January, 1979, Weyand, a real estate agent who was affiliated with Realty, contacted plaintiff and told her that Weyand had a new listing, that she had talked to the owner of the house, Martin, who had told her the house had new wiring, a new roof, a new foundation and new plumbing and that the house had been completely "rehabilitated." On inspection, plaintiff was impressed with the new walls, ceiling and carpeting. Weyand told plaintiff not to make an offer less than the list price on the house, because it was "hot" and would sell quickly and that, if plaintiff did not like the house at the listing price, Weyand's parents would be interested in it. Plaintiff signed an earnest money agreement for the $32,000 listing price and moved in in February, 1979.

On the day after plaintiff moved in, she was unable to draw any water from a faucet in the bathroom and discovered that the water pipes were split. Over the next year she learned that the wiring was not new, that the house was infested with termites and that it did not have a new foundation. She also learned that the roof leaked, rain water came through light fixtures, there was water above a false ceiling in the bathroom, the interior walls were cracking and the ceilings were caving in.

Plaintiff then brought this action. During plaintiff's

---

[1] Plaintiff's claims against defendant Mayfair Realty, Inc., were dismissed on stipulation, and it is not a party to this appeal.

case-in-chief, the trial court directed a verdict[2] in favor of defendants on plaintiff's allegations that defendants had represented that the house had been completely "remodeled" and, after further testimony, directed a verdict in favor of Realty as to both of plaintiff's claims. In the trial of the remaining case against Martin, plaintiff waived a jury, and the court found that Martin had made no misrepresentations and directed a verdict in his favor. We reverse and remand.

Plaintiff assigns as error the directed verdict removing her allegation that defendants had misrepresented the home as "remodeled."[3] She argues that the trial court usurped the function of the jury in deciding that "remodeled" had no meaning.

In its memorandum opinion, the court stated:

"During plaintiff's case in chief the court directed a verdict in favor of both defendants Martin and The Realty Group, Inc., concerning the allegations that defendants misrepresented that plaintiff's house had been 'completely remodeled.' It is undisputed that defendant Martin had patched and painted the interior walls of the house, carpeted the floors and made other minor repairs. The house was thus 'remodeled.' Plaintiff's contention that the term 'remodeled' is a representation that a 78-year-old house is defect-free is not consistent with common English usage of that word."

Plaintiff argues that she did not contend that the house should be without defects but that a reasonable person would not expect a remodeled house to have the number of substantial defects that this house had. Realty urges that the trial court was correct in taking the issue from the jury, because the term is "susceptible to myriad interpretations."

In order to prevail on a motion for directed verdict, it must be shown that reasonable persons could draw but one inference from the evidence and that the inference supports

---

[2] It is not clear from the record what motions were made to the court on the basis of the court's ruling. We have searched in vain for a motion for directed verdict from counsel for The Realty Group, Inc. The court appears to have directed the verdict *sua sponte.*

[3] In her complaint, plaintiff alleged that the home was represented to have been "rehabilitated." At trial the court suggested that the term "remodeled" be substituted, and the parties agreed. The judge then ruled that the term was not a representation of any condition of the house which could be actionable.

the conclusion urged by the moving party. *James v. Carnation Co.*, 278 Or 65, 69, 562 P2d 1192 (1977). If reasonable minds can differ as to the inferences to be drawn from the evidence, the motion will be denied. *Resser v. Boise Cascade Corp.*, 284 Or 385, 390, 587 P2d 80 (1978).

■ ■    Plaintiff presented evidence that the listing for the house stated that the house was "all remodeled on the inside." The real estate agent read the listing[4] to plaintiff and made an independent representation that the house had new wiring or was being rewired. The house did have new carpeting and some interior repairs. Plaintiff offered evidence[5] that would have shown that, at that time, a home that had been remodeled in accordance with Portland ordinance provisions would have had more extensive repairs. With that evidence, it was a question for the jury to determine whether the work done made the home "remodeled".

■    Plaintiff also assigns as error the directed verdict in favor of Realty on plaintiff's claims that it made fraudulent misrepresentations.[6] We disagree with Realty that plaintiff failed to produce enough evidence to present a jury question. In an action for fraud a plaintiff must show a (1) material representation; (2) that is false; (3) the speaker's knowledge of its falsity or inexcusable ignorance of its truth; (4) intent that

---

[4] The listing stated:

"Remodeled [V]ictorian in excellent area * * * modern [V]ictorian in one of SE Portland[']s finest residential areas * * * This is a must-see. Victorian styling on the outside but all remodeled on the inside."

[5] Plaintiff is correct in her third assignment, that the court erred in sustaining the objection to the testimony of Oshin, Wood and Chappy. Their testimony was relevant regarding the representation that the house was remodeled. Plaintiff also argues that it was error to exclude the video tape showing the condition of the house. Although, generally, the admissibility of demonstrative evidence is within the discretion of the trial court, the court may not arbitrarily exclude that evidence. *Rich v. Cooper*, 234 Or 300, 312, 380 P2d 613 (1963). The evidence here is relevant to the representation that the house was remodeled and on retrial, unless it is shown that the evidence would produce undue prejudice or confuse the jury, the video tape should be admitted.

[6] At different times the judge gave different grounds for his ruling: (1) There was a variance in the pleadings; (2) the representation was hearsay; and (3) plaintiff did not prove a "motive." All three reasons were erroneous. Plaintiff's pleading clearly alleges a claim for misrepresentation and her testimony is consistent with the theory. Plaintiff's statements that Weyand said certain things about the condition of the house were not offered to prove the truth of the matter asserted but to establish one of the elements of misrepresentation. Motive is not an element which a plaintiff must prove in an action for deceit.

the representation be acted on by the person and in the manner reasonably contemplated; (5) the hearer's ignorance of its falsity; (6) the hearer's right to rely thereon; and (7) damage. *Musgrave v. Lucas*, 193 Or 401, 410, 238 P2d 780 (1951).

■     The evidence established that Martin had signed a listing stating that the home was "remodeled." Plaintiff testified that Weyand, an agent of Realty, had told her that Martin had said the house had new wiring, a new roof and a new foundation. Weyand had made the independent representation that the house was being rewired or had new wiring. Implicit in plaintiff's testimony about her discovery of the home's problems is that plaintiff was unaware that the representations were not true. That Weyand intended that plaintiff would rely on the representation was also implicit in Weyand's tactics in selling the home. Plaintiff also presented evidence of damages.[7]

■     In the memorandum opinion, the trial court noted:

> "At the conclusion of plaintiff's case the court directed a verdict in favor of defendant, The Realty Group, Inc., on the grounds that there was no evidence that its agent either knew or should have known that any representations made to plaintiff were false. Plaintiff testified that defendant's agent [Weyand] stated that just prior to showing the house she had phoned defendant Martin and Martin had told her that the house had 'a new roof, new foundation, new ceiling, new plumbing and had been completely remodeled.' Plaintiff conceded that she knew that [Weyand] had never seen the house before and had no means of knowing whether Martin's alleged statement was true or false."

Plaintiff's concession does not defeat her case.[8] It is relevant to the issue of whether Weyand knew that her statements

---

[7] Plaintiff has also assigned as error the court's striking the testimony of Dawell, plaintiff's witness on damages. The court did that on its own motion, apparently not at trial, but in the memorandum opinion. That was error. The discrepancies in Dawell's testimony as to the value of the house were not so egregious as to render the testimony "a sham." The discrepancies go to the weight which the jury would give to the testimony but are not a basis here on which to strike the testimony.

[8] After the directed verdict in favor of Realty was ordered, Weyand testified that, in fact, Martin had never made any representations to her at all. Martin testified that he did not speak with Weyand before plaintiff's offer was given to him and that he was not even sure that he spoke with Weyand at that time.

were false or, at best, knew that she did not know whether they were true but made them anyway. Whether plaintiff, in the circumstances, had a right to rely on Weyand's statements was a question for the jury.

■■ We also find that plaintiff established a *prima facie* case for a UTPA violation, although the court made no ruling relating specifically to that claim.[9] Apparently the court found that plaintiff had to prove "false representations" equivalent to the common law fraud standard in order to make out a claim. That is not correct. *See State ex rel Redden v. Discount Fabrics*, 289 Or 375, 615 P2d 1034 (1980).

ORS 646.608 provides, in part:

"(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have * * * ."

"* * * * *

"(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if they are of another."

Plaintiff is correct that she need not prove the elements of common law fraud in order to recover under the act. *State ex rel Redden v. Discount Fabrics, supra.* As we stated in *Raudebaugh v. Action Pest Control, Inc.,* 59 Or App 166, 171, 650 P2d 1006 (1982):

"If there is ascertainable loss to a consumer, that consumer has a cause of action for general and punitive damages. ORS 646.638(1). The elements of the cause of action are specified in the statute, and the consumer may recover by alleging and proving that there was a wilful violation of the provisions of the Act and ascertainable damages as a result of the violation. There is no requirement that the representations which constitute a wilful violation of the act be made to the injured consumer. Had the legislature intended that a consumer prove all the elements of common law fraud in order to recover damages, it would have been unnecessary to create

---

[9] Plaintiff assigned as error that the trial court directed a verdict on the claim.

a cause of action by statute. ORS 646.656 provides that the remedies specified in the act are in addition to all other civil remedies existing at common law. This indicates legislative intent to create a special remedy different from those that exist at common law."

It is a question for the jury whether the representations made by Martin in the listing agreement[10] and by Weyand directly to plaintiff were statements that the home purchased by plaintiff had qualities and characteristics which, in fact, it did not possess. It was error not to submit the claim to the jury for consideration.

Reversed and remanded.

---

[10] After hearing the evidence in the trial of the remaining claims against Martin, the court found that he had made no representations other than in the listing agreement and decided in his favor. However, because it was error for the court to remove the allegation that the house was represented as remodeled, the verdict in favor of Martin also must be reversed.