**Karen CIANFICHI, Appellant,**

**v.**

**WHITE HOUSE MOTOR HOTEL, Appellee.**

**No. 01–95–00501–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 11, 1996.

Rehearing Overruled May 2, 1996.

Jake Johnson, Andrea Hedrick, Cindy Jones, James Wyckoff, Houston, for Appellant.

Jeffrey H. Marsh, Houston, for Appellee.

Before COHEN, O'CONNOR and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellant, Karen Cianfichi, appeals a take-nothing judgment which was entered after the jury returned a verdict in favor of appellee, White House Motor Hotel (the hotel). We affirm.

On July 21, 1992, appellant's husband, Joseph Cianfichi, checked into the White House Motor Hotel in Houston, Texas. Mr. Cianfichi was a long-haul truck driver and had stayed at the hotel on several prior occasions because he liked to visit the nearby Astrodome and watch the Houston Astros play whenever he was in town.

To prevent the theft of televisions, the hotel had purchased and installed a closed-circuit camera system, which consisted of five working cameras and one "dummy" camera. The "dummy" camera was installed for deterrence purposes. The operational cameras were located at strategic points on the premises. In addition to the camera and other equipment, the hotel purchased signs which stated, "NOTICE! 24 HOUR SURVEILLANCE IS BEING RECORDED ON VIDEO TAPE BY CLOSED CIRCUIT TELEVISION." The view from the cameras was recorded on videotape 24 hours a day.

On the evening of July 20, 1992, Joseph Cianfichi walked from the hotel to the Astrodome to watch a ballgame. The next morning, Mr. Cianfichi got up, dressed, and walked to the lobby of the hotel for coffee and doughnuts. As he was getting ready to leave the hotel, he was shot by two unknown gunmen. Mr. Cianfichi crawled to the phone by his bed and called the front desk of the hotel. Robert Hollingsworth, the clerk on duty, immediately called 911, and then called Mr. Cianfichi back to assure him that help was on the way. A few minutes later, Mr. Cianfichi called Hollingsworth again, this time begging him to hurry and telling Hollingsworth that he was dying. Hollingsworth again assured Mr. Cianfichi that help was on the way. By this time Hollingsworth could hear the sirens of the emergency vehicles. Less than 10 minutes had elapsed since Mr. Cianfichi's first call for help. Mr. Cianfichi was transported to a nearby hospital, but he died during surgery.

Mr. Cianfichi's widow sued the hotel under theories of negligence and the Deceptive Trade Practices Act (DTPA).[1] Her DTPA claim was based on the theory that the signs posted throughout the hotel misrepresented the adequacy of its security services. Cianfichi claimed that the hotel's surveillance equipment did not function 24 hours a day, did not cover all of the property, was monitored intermittently, and that the hotel's staff was untrained in the use of the surveillance equipment. The trial court refused to submit Cianfichi's DTPA questions to the jury, and the jury found the hotel not negligent.

---

1. Tex.Bus. & Com.Code Ann. § 17.41 (Vernon 1987).

In seven related points of error, Cianfichi claims the trial court erred by refusing to submit her cluster of proposed DTPA questions to the jury. Cianfichi argues that signs which were posted throughout the hotel misrepresented the adequacy of the hotel's security, and that these misrepresentations were the producing cause of her husband's death. The hotel responds that the trial court properly refused the DTPA questions because any misrepresentations on its signs were not a producing cause of Mr. Cianfichi's death.[2]

■ A party is entitled to a jury question, instruction, or definition if the issue is raised by the pleadings and the evidence. TEX. R.CIV.P. 278. The trial court must submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). However, if an issue is conclusively established as a matter of law, the question should not be submitted to the jury. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222–23 (Tex.1992).

Cianfichi's DTPA claims were based on signs in the hotel that indicated that it provided "24 hour surveillance." If a misrepresentation on the signs was not a producing cause of Mr. Cianfichi's death as a matter of law, the trial court properly refused the plaintiff's questions. Therefore, the issue before the Court is whether the signs were a producing cause of Mr. Cianfichi's death.

■ The elements of a DTPA cause of action are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995); TEX.BUS. & COM.CODE ANN. § 17.50(a)(1). A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred. *Boys Clubs*, 907 S.W.2d at 481. Producing cause contains the same cause-in-fact element as proximate cause, but does not require the element of foreseeability. *Id.; Bown v. Lon-*

*go*, 909 S.W.2d 618, 620 (Tex.App.—Fort Worth 1995, no writ). However, merely given a negligent act and an injury, it does not logically follow that the two must be causally connected. *Boys Clubs*, 907 S.W.2d at 481. The plaintiff must show an "unbroken causal connection" between the misrepresentation and the injury. A consumer is not required to prove reliance as an element to recover under the DTPA, but reliance may be a factor in deciding whether the defendant's conduct was a producing cause of damages to the plaintiff. *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 130 (Tex.App.—Texarkana 1994, writ denied).

In *Boys Clubs,* the plaintiffs' grandsons were sexually molested by a volunteer for the Boys Club. 907 S.W.2d at 475. The boys' grandparents sued the Boys Club under the DTPA and alleged that they were misled by the Boys Club's statement that it thoroughly "checked out" its volunteers. *Id.* at 481. The supreme court held that the misrepresentation was not a producing cause of the boys injuries because the plaintiffs' relationship with the volunteer had developed independently of the Boys Club's relationship with the plaintiffs. *Id.* Even though the plaintiffs had met the volunteer through the Boys Club, they had subsequently developed an independent relationship with him. *Id.* Thus, the causal connection between the misrepresentation and the injury was broken. *Id.*

■ The evidence in this case showed that Mr. Cianfichi was a long-haul trucker. His daughter testified that when choosing a motel, her father looked a place where he could park his truck so that it would be clearly visible. His wife testified that he also looked for a place with good food nearby. Mr. Cianfichi's wife, his daughter, and his son all testified that he loved baseball, and whenever possible he would stay near a ballpark. In fact, on the night before he was murdered, Mr. Cianfichi walked to the nearby Astrodome to watch a ballgame.

---

**2.** For purposes of this opinion, we will assume without deciding that the signs contained a mis-

representation.

Dean Cianfichi testified that as a teenager, he often travelled with his father. He had been to Houston with his father on at least six or seven occasions in the 1980s, and each time they had stayed at the White House Motor Hotel. Dean testified that his father chose the hotel because the Houston Astrodome was nearby.

There is no evidence in the record to show where the signs in question were posted, that Mr. Cianfichi even saw the signs, or had any knowledge of them, whether actual or constructive. Furthermore, the only evidence in the record shows that Mr. Cianfichi chose to stay at the hotel because it was near the Astrodome. Most importantly, the evidence shows that Mr. Cianfichi had stayed at the hotel on at least six or seven occasions *before the signs and security cameras were ever installed.* There is nothing in the record to show that the signs were a substantial factor which brought about Mr. Cianfichi's death. *Boys Clubs,* 907 S.W.2d at 481. There is no evidence that but for the misrepresentations, Mr. Cianfichi's death would not have occurred. The undisputed evidence shows that even without the signs and cameras, Mr. Cianfichi had stayed at the hotel several times in the past because it was near the Astrodome. Like the plaintiffs in *Boys Clubs,* Mr. Cianfichi's relationship with the hotel developed independently from the alleged misrepresentation. Thus, the evidence shows no causal connection between the signs and Mr. Cianfichi's murder.

Because the signs were not a producing cause of Mr. Cianfichi's death as a matter of law, the trial court properly refused to submit Cianfichi's DTPA questions.

We overrule points of error one through seven.

We affirm the judgment.