TRACKER MARINE, L.P., Appellant,

v.

Ken OGLE and Randy Baccus,
As Class Representatives,
Appellees.

No. 14–02–00094–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 10, 2003.

Kevin Dane Mohr, Michael W. Youtt, Robert E. Meadows, Houston, for Appellant.

Terrell W. Oxford, Dallas, Thomas W. Paterson, William R.H. Merrill, Houston, for Appellees.

Panel consists of Chief Justice BRISTER and Justices HUDSON and FOWLER.

## OPINION

SCOTT BRISTER, Chief Justice.

Two pontoon-boat buyer—sone from Texas, one from Tennessee—brought suit on behalf of themselves and 74,000 others against appellant Tracker Marine, L.P., the manufacturer, alleging misrepresentations regarding the plywood used on their boats. The trial court certified their class action in January 2000, without indicating how these claims would be tried. After Tracker Marine filed an interlocutory appeal, the Texas Supreme Court mandated such plans in *Southwestern Refining Co. v. Bernal.*[1] Accordingly, we reversed.[2]

On remand, the trial court again certified the class on December 17, 2001, this time including a trial plan. Tracker Marine again appealed, and during the appeal the Supreme Court again issued an opinion, *Henry Schein, Inc. v. Stromboe,*[3] that renders the trial courts certification unsustainable. Accordingly, we must again reverse.

### *Background*

The certified class consists of consumers who bought new Tracker Marine pontoon boats between 1987 and 1998 constructed in whole or part using wood. Tracker Marine sold approximately 74,000 of such boats through independent retail dealers in all fifty states and several foreign countries. The class alleges the plywood used on the deck, furniture, or transom of some models has a propensity to rot when exposed to water—as boats often are.

But the class allegations contain no contract, warranty, or product liability claims. Instead, the class asserts only affirmative misrepresentations or omissions in Tracker Marines brochures (also distributed through retail dealers) that allegedly violate the Missouri Unlawful Merchandising and Practices Act.[4] Even though the class sought was nationwide, the plaintiffs argued only Missouri law applied, as Tracker Marine made all boats and issued all brochures there.

■ The trial court granted certification, finding common questions of law and fact predominated over individual questions, and a class action was superior to other available methods of adjudication.[5] Although we review the trial courts order for abuse of discretion, we do not indulge every presumption in its favor, as compliance with class action requirements must be demonstrated rather than presumed.[6] We also must evaluate "the claims, defenses, relevant facts, and applicable substantive law."[7]

■ These standards conflict with several earlier opinions in which this Court applied different standards. Clearly, the Supreme Court's opinion in *Schein* requires us to abandon our previous practice indulging presumptions in favor of certification.[8] It also requires us to abandon our

1. 22 S.W.3d 425, 435 (Tex.2000).

2. *Tracker Marine, L.P. v. Ogle,* No. 14–00–00230–CV, 2000 WL 1588115 (Tex.App.-Houston [14th Dist.] Oct. 26, 2000, no pet.) (not designated for publication).

3. 46 Tex. Sup.Ct. J. 103, 102 S.W.3d 675, 2002 WL 31426407 (Oct. 31, 2002).

4. *See* Mo.Rev.Stat. §§ 407.010–.025.

5. *See* Tex.R. Civ. P. 42(b)(4).

6. *See Schein,* 102 S.W.3d at 691–92.

7. *Id.*

8. *See, e.g., Charlie Thomas Courtesy Leasing, Inc. v. Taylor,* 44 S.W.3d 684, 687 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Entex, a Div. of Noram Energy Corp. v. City of Pearland,* 990 S.W.2d 904, 909 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 839 (Tex. App.-Houston [14th Dist.] 1996, no pet.);

practice postponing choice-of-law questions until after certification,[9] as we can hardly evaluate the claims, defenses, or applicable law (as *Schein* requires) without knowing what that law is.[10] Thus, we proceed first to an analysis of the choice of law.

### Comparing the Laws

■ Tracker Marine challenges the trial court's conclusion that Missouri law applies to all class members' claims. The determination of which state's law applies is a question of law for the court;[11] we review it *de novo*.[12] The analysis must be conducted on an individual basis;[13] a nationwide class is not entitled to a "looser" analysis merely because applying one state's law would be easier than applying many.[14] Nor can class members opt in or out of applicable law; plaintiffs are bound by the law that governs their claims even if they would prefer that a different law apply.[15]

■ In reviewing the trial court's decision, we must first decide whether Missouri law conflicts with the laws of other interested states, as there can be no harm in applying Missouri law if there is no conflict.[16] The class representatives bear the burden of establishing the prerequisites for class treatment, so they must present an extensive analysis of state law evaluating any differences.[17]

All fifty states have enacted consumer protection statutes authorizing a state agency or private parties to prosecute consumer fraud or deceptive trade practices. However, the scope, procedures, and remedies of those statutes vary considerably:

● *Private right of action.* Although most states allow individuals to bring private actions, at least one does not.[18] Nebraska and New York require public interest

---

*Morgan v. Deere Credit, Inc.*, 889 S.W.2d 360, 365 (Tex.App.-Houston [14th Dist.] 1994, no writ).

**9.** *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex.App.Houston [14th Dist.] 1995, writ dismd w.o.j.); *Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 517 (Tex.App.Houston [14th Dist.] 1992, no writ). These opinions appear to have been based on the presumption that, if choice-of-law problems later proved intractable, the class could be decertified then. *See Angeles/Quinoco*, 841 S.W.2d at 517. The Supreme Court rejected this certify now and worry later approach in *Southwestern Ref. Co., Inc. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000).

**10.** The federal courts follow this same rule. *See Spence v. Glock*, 227 F.3d 308, 313 (5th Cir.2000) (holding trial court must know which law will apply before making predominance determination); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996) (same). Federal cases interpreting the similar federal class action requirements are persuasive authority. *Bernal*, 22 S.W.3d at 433.

**11.** *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex.2000).

**12.** *See Minn. Min. & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex.1996).

**13.** *See Lutheran Brotherhood v. Kidder Peabody & Co., Inc.*, 829 S.W.2d 300, 310 (Tex. App.-Texarkana 1992, writ granted w.r.m.).

**14.** *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

**15.** *Id.* at 820, 105 S.Ct. 2965.

**16.** *Id.* at 815, 105 S.Ct. 2965.

**17.** *See Spence*, 227 F.3d at 313; *see also Schein*, 102 S.W.3d at 696–97.

**18.** *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 229 (Iowa 1998) (holding no private cause of action under Iowa consumer protection statute); *see also Patterson v. Beall*, 19 P.3d 839, 846 n. 10 (Okla.2000) (noting that Oklahoma did not allow private actions until 1988).

impact before allowing private actions.[19] Nevada allows private actions only by the elderly or disabled.[20]

● *Class actions.* Several states prohibit class actions under their consumer protection statutes.[21] Others limit the claims that can be certified,[22] the damages recoverable by a class,[23] or the consumers who can be class members.[24]

● *Limitations.* The time allowed by the states for bringing consumer protection claims varies from one year[25] to six years.[26] Accrual runs from occurrence in some states,[27] and from discovery in others.[28] Several states toll limitations during the pendency of consumer protection actions by the state.[29]

● *Violations.* Many statutes contain a "laundry list" of specific violations;[30] others have only broad definitions without limiting the specific acts included.[31]

● *Scienter.* The mental state required for a violation varies from intentionally[32] to knowingly[33] to negligence[34] to no apparent scienter requirement at all.[35]

● *Reliance.* Some states require reliance on the alleged violations;[36] others do

---

**19.** *See* Nebraska: NEB.REV.STAT. § 59–1601(2); New York: MCKINNEYS GEN. BUS. LAW § 349.

**20.** *See* NEV.REV.STAT. § 598.0977.

**21.** *See e.g.*, Alabama: ALA.CODE § 8–19–10(f); Georgia: GA.CODE ANN. § 10–1–399(a); Louisiana: LA.REV.STAT. ANN. § 51:1409; Mississippi: MISS.CODE ANN. § 75–24–15(4); Montana: MONT.CODE ANN. § 30–14–133(1); South Carolina: S.C.CODE ANN. § 39–5–140(a).

**22.** *See e.g.*, Kansas: KAN. STAT. ANN. § 50–634(d) (limiting class actions to certain consumer claims).

**23.** *See, e.g.*, Idaho: IDAHO CODE § 48–608(1) (limiting class recovery to actual damages); KANSAS: KAN. STAT. ANN. § 50–634(d) (same); Michigan: MICH. COMP. LAWS § 445.911(3) (same); New Mexico: N.M. STAT. ANN. § 57–12–10(E) (same).

**24.** *See, e.g.*, Connecticut: CONN. GEN.STAT. ANN. § 42–110g(b) (limiting class actions to residents or consumers injured within the state).

**25.** *See* Louisiana: LA.REV.STAT. ANN. § 51:1409(E); Oregon: OR.REV.STAT. § 646.638; Tennessee: TENN.CODE ANN. § 47–18–110; Wyoming: WYO. STAT. ANN. § 40–12–109.

**26.** *See* Michigan: MICH. COMP. LAWS § 445.911(7).

**27.** *See, e.g.*, Michigan: MICH. COMP. LAWS § 445.911; Kentucky: KY.REV.STAT. ANN. § 367.220(5).

**28.** *See, e.g.*, Alaska: ALASKA STAT. § 45.50.531(f); Georgia: GA.CODE. ANN. § 10–1–401(a)(1).

**29.** *See, e.g.*, Kentucky: KY.REV.STAT. § 367.220(5); Nebraska: NEB.REV.STAT. § 59–1612; Oregon: OR.REV.STAT. § 646.638(6); Virginia: VA.CODE ANN. § 59.1–204.1(B); Washington: WASH. REV.CODE ANN. § 19.86.120.

**30.** *See, e.g.*, Alabama: ALA.CODE § 8–19–5; California: CAL. CIV.CODE § 1770; Michigan: MICH. COMP. LAWS ANN. § 445.903.

**31.** *See, e.g.*, Illinois: 815 ILL. COMP. STAT. 505/2; New Jersey: N.J. STAT. ANN. § 56:8–2; New York: MCKINNEYS GEN. BUS. LAW § 349(a).

**32.** *See, e.g.*, Arizona: ARIZ.REV.STAT. § 44–1522; Delaware: DEL.CODE ANN. tit. 6, § 2513; Minnesota: MINN.STAT. ANN. § 325F.69; North Dakota: N.D. CENT.CODE § 51–15–02.

**33.** *See, e.g.*, New Mexico: N.M. STAT. ANN. § 57–12–2(D).

**34.** *See, e.g.*, Kansas: KAN. STAT. ANN. § 50–627(b); Oklahoma: OKLA. STAT. tit. 15 § 753.

**35.** *See, e.g.*, Connecticut: CONN. GEN.STAT. § 42–110g; Florida: FLA. STAT. ANN. § 501.204; Louisiana: LA.REV.STAT. ANN. § 51:1405; North Carolina: N.C. GEN.STAT. § 75–1.1(a); Ohio: OHIO REV.CODE ANN. § 1345.02; Washington: WASH. REV.CODE § 19.86.020.

**36.** *See, e.g.*, Louisiana: *Louisiana ex rel. Guste v. General Motors Corp.*, 370 So.2d 477, 489

not.[37] Still others require proof of causation rather reliance,[38] even though they are very nearly the same thing.[39]

● *Exemplary damages.* Some states prohibit exemplary damages under their consumer protection statutes.[40] Others allow them in amounts within the discretion of the fact-finder,[41] or according to multipliers.[42] In a few states, additional

remedies are available for the elderly or disabled.[43]

■ Obviously, the conflicts among these laws are substantial; we are hardly the first court to note these differences.[44] Thus, we cannot affirm the application of Missouri law on the basis that all consumer protection statutes are pretty much alike. Instead, to review how the class

(La.1978); Pennsylvania: *Weinberg v. Sun Co., Inc.,* 565 Pa. 612, 777 A.2d 442, 445 (2001) (requiring proof of reliance and causation in false advertising claim). *But see Fay v. Erie Ins. Group,* 723 A.2d 712, 714 (1999) (requiring causal connection to or reliance on alleged misrepresentations); Vermont: VT. STAT. ANN. tit. 9, § 2461(b); Texas: TEX. BUS & COM.CODE § 17.50(a)(1); Wyoming: WYO. STAT. ANN. § 40–12–108(a).

**37.** *See, e.g.,* Delaware: DEL.CODE ANN. tit. 6, § 2513(a); Illinois: 815 ILL. COMP. STAT. 505/2; Kansas: KAN. STAT. ANN. § 50–626(b); Maryland: MD.CODE ANN., COMM. LAW I § 13–302; Massachusetts: *Sebago, Inc. v. Beazer E., Inc.,* 18 F.Supp.2d 70, 103 (D.Mass.1998); Minnesota: MINN.STAT. § 325F.69(1); Missouri: *State v. AreaCo Inv. Co.,* 756 S.W.2d 633, 635–36 (Mo.App.1988); New Jersey: N.J. STAT. ANN. § 56:8–2; North Dakota: N.D. CENT.CODE § 51–15–02; Oregon: *Banks v. Martin,* 78 Or.App. 550, 717 P.2d 1192, 1196 (1986); South Dakota: S.D. CODIFIED LAWS § 37–24–6(1); Tennessee: *Harvey v. Ford Motor Credit Co.,* 1999 WL 486894, *2 (Tenn.Ct.App.1999) (not designated for publication).

**38.** *See, e.g.,* New York: *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 895–96, 731 N.E.2d 608 (2000); Texas: *Cianfichi v. White House Motor Hotel,* 921 S.W.2d 441, 443 (Tex.App.-Houston [1st Dist.] 1996, writ denied); Washington: *Pickett v. Holland Am. Line–Westours, Inc.,* 145 Wash.2d 178, 35 P.3d 351, 360 (Wa.2001).

**39.** *See Cianfichi,* 921 S.W.2d at 443–44.

**40.** *See, e.g.,* Maryland: *CitaraManis v. Hallowell,* 328 Md. 142, 613 A.2d 964, 970 (1992); South Dakota: *Wyman v. Terry Schulte Chevrolet, Inc.,* 584 N.W.2d 103, 107 (S.D.1998).

**41.** *See, e.g.,* California: CAL. CIV.CODE § 1780(a)(4); Connecticut: CONN. GEN.STAT. ANN. § 42–110g(a); Idaho: IDAHO CODE § 48–608(1); Illinois: 815 ILL. COMP. STAT. 505/10a; Kentucky: KY.REV.STAT. § 367.220(1); Missouri: MO. REV. STAT. § 407.025(1); Oregon: OR.REV.STAT. § 646.638(1); Rhode Island: R.I. GEN. LAWS § 6–13.1–5.2(a).

**42.** *See, e.g.,* Alabama: ALA.CODE § 8–19–10(a)(2); Colorado: COL.REV.STAT. § 6–1–113(2)(a)(III); Hawaii: HAW.REV.STAT. § 480–13(b)(1); Louisiana: LA.REV.STAT. ANN. § 51:1409(A); Massachusetts: MASS. GEN. LAWS 93A § 9(3); Montana: MONT.CODE ANN. § 30–14–133(1); New Hampshire: N.H.REV. STAT. ANN. § 358 A:10(I); New Jersey: N.J. STAT. ANN. § 56:8–19; New Mexico: N.M. STAT. ANN. § 57–12–10(B); New York: McKINNEYS GEN. BUS. LAW § 349(h); North Carolina: N.C. GEN.STAT. § 75–16; Ohio: OHIO REV. CODE ANN. § 1345.09(B); Pennsylvania: PA. STAT. ANN. tit. 73, § 201–9.2(a); South Carolina: S.C.CODE ANN. § 39–5–140(a); Tennessee: TENN.CODE ANN. § 47–18–109(a)(3); Texas: TEX. BUS. & COM.CODE § 17.50(b)(1) (depending on applicable statute year); Vermont: VT. STAT. ANN. tit. 9, § 2461(b); Virginia: VA.CODE ANN. § 59.1–204(A); Washington: WASH. REV.CODE ANN. § 19.86.090.

**43.** *See, e.g.,* Arkansas: ARK.CODE ANN. § 4–88–204; California: CAL. CIV.CODE § 1780(b); Hawaii: HAW.REV.STAT. § 480–13(b)(1); Indiana: IND.CODE § 24–5–0.5–4(h); Nevada: NEV. REV. STAT. 598.0977.

**44.** *See, e.g., BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568–69, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1995) (noting that state deceptive trade practices laws are not uniform); *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1017 (7th Cir.2002) (noting that state consumer-protection laws vary considerably).

claims will be tried, we must first review which law will apply.

### *Choosing the Law*

 The Due Process Clause limits the extent to which one state's law can be applied to claims that arise in many states.[45] In *Schein,* the Texas Supreme Court stated that Texas ... does not apply the law of the state where a defendant is headquartered to every claim for economic damages that can be alleged.[46] Indeed, Texas courts have usually applied our statute to consumer complaints that arose here regardless of the defendant's headquarters.[47] The notion of applying the law of the manufacturer's domicile to all consumer complaints is, according to the Seventh Circuit, a "novelty." [48]

The class argues the Supreme Court's statement in *Schein* is inapplicable because the claims alleged there (in addition to consumer protection) were breach of contract, warranty, fraud, and everything else in the contort kitchen sink. We doubt the choice-of-law pronouncement in *Schein* can be read so narrowly. But even if we were sailing on uncharted waters, we believe a traditional choice-of-law analysis would arrive at the same port.

 Texas has adopted the Restatements approach to choice-of-law questions, asking which state has the most significant

relationship to the issue to be resolved.[49] Generally, the contacts we must consider and standards we must apply are those found in the Restatement section specifically addressed to that particular issue.[50] In this case, the primary claim is economic harm allegedly caused by Tracker Marines misrepresentations to customers. The Restatement addresses such claims in section 148, entitled Fraud and Misrepresentation.

Section 148 contains two subsections. The first governs cases in which all actions (from misrepresentation to reliance and injury) take place in one state. In such cases, the law of that state generally applies.[51] For class members who lived in Missouri and had their only contacts with Tracker Marine there, it is hard to imagine any other state that would have a more significant relationship. For them, Missouri law would appear to apply.

But the analysis is different for all the other class members. Section 148(2) governs transactions that take place in more than one state, and requires us to consider such of the following contacts, among others, as may be present:

 (a) the place, or places, where the plaintiff acted in reliance upon the defendants representations,

 (b) the place where the plaintiff received the representations,

 (c) the place where the defendant made the representations,

---

**45.** *See Shutts,* 472 U.S. at 821, 105 S.Ct. 2965.

**46.** *Schein,* 102 S.W.3d at 697–99.

**47.** *See, e.g., Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 453–54 (Tex.2000) (applying Texas DTPA to suit against out-of-state corporation); *Busse v. Pac. Cattle Feeding Fund No. 1, Ltd.,* 896 S.W.2d 807, 814 (Tex.App.-Texarkana 1995, writ denied) (applying Texas DTPA to suit against Iowa resident); *see also Rush v. Barrios,* 56 S.W.3d 88, 97 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (stat-

ing courts generally apply substantive law of the state where cause of action arose).

**48.** *See Bridgestone/Firestone,* 288 F.3d at 1016.

**49.** *Hughes Wood Prods., Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex.2000); *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 145(1) (tort) & 188(1) (contract) (1971).

**50.** *See Hughes Wood,* 18 S.W.3d at 205–06.

**51.** RESTATEMENT (SECOND) § 148(1).

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.[52]

Tracker Marine concedes its Missouri domicile implicates the third and (partially) fourth contacts. But it points out that all others will usually point to the state where each class member resides, assuming that is where they shopped for and bought their boats.

As is often the case, the Restatement provides no firm guidance as to how we should analyze these contacts; indeed, it provides that [n]o definite rules as to the selection of the applicable law can be stated.[53] Nevertheless, the comments to Restatement section 148 suggest an analysis that points well away from Missouri.

First, the place where the defendant made representations and the place where the plaintiff received them are of equal importance, but both are outweighed by the place where the plaintiff acted in reliance.[54] It is undisputed that most buyers would have received brochures and acted on them outside Missouri.

Second, the residence of the plaintiff is more important than that of the defendant, as the financial loss involved will usually be of greatest concern there.[55] Consumer protection statutes are intended to protect consumers; one would expect the state where those consumers reside would have the most significant interest.[56]

Finally, the Restatement concludes with a general comment endorsing application of the law of each state where a class member resides:

If any two of the above-mentioned contacts, apart from the defendants domicile, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues. So when the plaintiff acted in reliance upon the defendants representations in a single state, this state will usually be the state of the applicable law, with respect to most issues, if (a) the defendants representations were received by the plaintiff in this state, or (b) this state is the state of the plaintiffs domicile or principal place of business, or (c) this state is the situs of the land which constituted the subject of the transaction between the plaintiff and the defendant, or (d) this state is the place where the plaintiff was to render at least the great bulk of his performance under his contract with the defendant. The same would be true if any two of the other contacts mentioned immediately above were located in the state in question even though this state was not the place where the plaintiff received the representations.[57]

---

52. *Id.* § 148(2).

53. *Id.* cmt. j, at page 448.

54. *Id.* cmt. g, at pages 447–48.

55. *Id.* cmt. i, at page 448.

56. *Cf. Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.,* 94 S.W.3d 163, 174–75

(Tex.App.-Houston [14th Dist.] 2002, no pet. h.) (applying Texas law regarding unfair bargaining to company that was domiciled and conducted bargaining in Texas).

57. RESTATEMENT (SECOND) § 148, cmt. j, at pages 448–49.

For class members located outside Missouri, applying Missouri law would stand this part of the Restatement on its head.[58]

Class counsel relies instead on the general principles set out in section 6 of the Restatement.[59] Those principles are:

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability and uniformity of result, and

 (g) ease in the determination and application of the law to be applied.[60]

As noted above, the Restatement generally requires us to rely less on the general principles (section 6) than on the applica-tion of those principles to the particular issue to be resolved (section 148).[61] But the analysis under either section should generally point in the same direction, as the specific sections were drafted as applications of the general principles.

First, applying the law of each consumer's state would protect the parties' justified expectations. The consumers here got both brochures and boats through independent dealers located in the fifty states. The parties quite reasonably assume most consumers shopped and bought in the state where they live; using the same reasoning, we would also expect them to sue there, too. Having shopped, bought, and sued in one state, surely they would not expect the law of some other state to apply.[62] Nor could Tracker Marine have expected otherwise; by setting up marketing and distribution systems in states other than Missouri, it purposefully availed itself of the benefits and protections of their laws.[63]

---

**58.** Section 148 so clearly points to the consumer's location rather than the manufacturer's that one writer calls it "one of the most easily applied tests in the Restatement." *See* Rory Ryan, Comment, *Uncertifiable?: The Current Status of Nationwide State Law Class Actions,* 54 BAYLOR L.REV. 467, 499 (2002) [hereinafter *Uncertifiable?*]. The section appears to reflect American law generally, as is the Restatements aim. *See Inacom Corp. v. Sears, Roebuck & Co.,* 254 F.3d 683, 688 (8th Cir.2001) (applying law of state where plaintiff received, took action on, and suffered damages from fraudulent concealment); *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 662 (9th Cir.1999) (applying law of state where claimant signed documents containing misrepresentations and was to render payment); *Trumpet Vine Invs., N.V., v. Union Capital Partners I, Inc.,* 92 F.3d 1110, 1118 (11th Cir.1996) (applying law of state where misrepresentations and initial acts of reliance occurred); *Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 820–21 (6th Cir.1990) (applying law of state where misrepresentations and reliance occurred); *Value House, Inc. v. MCI*

*Telecomms. Corp.,* 917 F.Supp. 5, 7 (D.D.C. 1996) (applying law of state where plaintiffs received negligent misrepresentations and acted in reliance on them).

**59.** *See* RESTATEMENT (SECOND) § 148 cmt. e, at page 447.

**60.** *Id.* § 6.

**61.** *See Hughes Wood,* 18 S.W.3d at 206.

**62.** *See Nishika Ltd.,* 953 S.W.2d at 737 (applying warranty law of state where negotiations occurred and goods were bought and made). Our analysis, of course, might be very different if Tracker Marine's contracts included a choice-of-law clause (which they did not). *See Schein,* 102 S.W.3d at 696–97.

**63.** *Compare Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 201 (Tex.1985) (holding manufacturer with substantial sales and office in Texas for sales, marketing research, and service was subject to personal jurisdiction),

Second, assuming again that consumers generally shop and sue in the same state, allowing that forum to apply its own laws would make the determination and application of law easier.[64]

Third, many states still follow the *lex loci delicti* rule, applying the law of the state in which the harm occurred.[65] In consumer fraud cases, harm occurs where the consumers are defrauded.[66] Applying the same rule in Restatement states like Texas enhances certainty, predictability and uniformity of result.

Fourth, applying the law of the states where consumers live encourages interstate and international trade. Fraud hampers trade; traders who are fooled once may be hesitant to trade again. Applying the law of a manufacturer's state to all consumer transactions might encourage a "race to the bottom," with some states attracting business by adopting lenient standards, and unscrupulous sellers rushing there as a result.[67]

The class argues the policies of all interested states and of consumer law itself would best be met by applying Missouri's law, because it is one of the most liberal consumer protection statutes in the coun-

try. In the first place, if Missouri's law satisfied the interests of all other states, it is strange they choose to enact laws that were different. Moreover, taking this argument to its logical conclusion, the most extreme law would always apply. This might simplify choice-of-law analyses, but it reflects a simplistic view of the policies behind such laws.

Like most laws, consumer protection statutes represent a balance of competing interests. The Texas statute, for example, provides remedies both for consumers subjected to deceptive practices and retailers subjected to frivolous consumer complaints.[68] When states adopt differing attempts to strike a fair balance between the interests of manufacturers and consumers, our job is not to decide which policy overrides the other, but instead to give greater weight to the other Restatement factors.[69] It is hard to see how the interests of each state could be met any better than by allowing each to apply its own laws.

A recent and remarkably similar federal case confirms our analysis. In *Lyon v. Caterpillar*, a boat-engine buyer filed a nationwide class action alleging misrepresentations regarding gas consumption, and

---

with *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806, 808 (Tex.2002) (holding nonresident that set up sales to avoid benefits and protections of Texas laws was not subject to personal jurisdiction).

**64.** Assuming the class is certified, the ease of applying the law would certainly be advanced by applying one state's law to all 74,000 transactions. But that would not be true if individual actions were brought in the courts of all fifty states, each of which had to determine and apply Missouri law rather than its own. The substantive law that applies cannot be changed merely by employing the procedural device of a class action. *See Bernal*, 22 S.W.3d at 437.

**65.** *See Bridgestone/Firestone*, 288 F.3d at 1016 (applying Indiana law).

**66.** *Id.*

**67.** *Cf. U.S. v. Marine Shale Processors*, 81 F.3d 1329, 1355 (5th Cir.1996) (recognizing that allowing each state to set air quality standards for local businesses would encourage industries to shift to states with most lenient standards).

**68.** *See* TEX. BUS. & COM.CODE § 17.50.

**69.** *Nishika Ltd.*, 953 S.W.2d at 736–37; *see also Bridgestone/Firestone*, 288 F.3d at 1017 (applying consumer fraud law of state where consumer is located rather than states with more favorable consumer law).

asserted that the law of Illinois (where the manufacturer was located) governed all consumer fraud claims.[70] Relying on Restatement section 148(2), the court instead applied the law of each state where a purchaser resided or bought a boat.[71]

Thus, while Missouri law will apply to claims by most of those who bought boats in that state, the class representatives have failed to show us it will apply to their own claims or those of most others.[72] The differences in state law cannot be concealed in a throng.[73] The trial court erred by finding Missouri law applicable to all claims by the class.

### *Nevertheless ...*

■ Nevertheless, the trial court found that even if the laws of all fifty states apply, certification was appropriate because common issues predominate. We disagree for five reasons.

First, "[n]o class action is proper unless all litigants are governed by the same legal rules."[74] The Texas Supreme Court in *Schein* noted that "[s]tate and federal courts have overwhelmingly rejected class certification when multiple states' laws must be applied."[75] Although there is room to argue this was not an absolute prohibition,[76] the Supreme Court's characterization of the trend as "overwhelming" (not to mention the 68 cases listed in support) clearly suggests which way the tide is running.

Second, the amended certification order indicates the fifty consumer protection statutes could be divided into approximately six subgroups. But the plan does not indicate what those groups were; at oral argument, neither counsel had any idea either. Certification cannot be based on mere assurances or secret trial plans.[77]

Third, the states are of too many minds as to scienter and reliance. As noted above, the statutes addressing scienter (the manufacturer's state of mind) punish conduct ranging from intentional to knowing to negligent. As the class includes boats sold over a 12–year period with three different deck types[78] and many dif-

---

**70.** 194 F.R.D. 206 (E.D.Pa.2000).

**71.** *Id.* at 212–18.

**72.** Appellees point out the Austin Court of Appeals applied Texas law to a nationwide class action in *National Western Life Ins. Co. v. Rowe,* 86 S.W.3d 285, 298 (Tex.App.-Austin 2002, pet. filed). That case predates *Schein,* and may not survive it. If it does, we disagree with our sister court's Restatement analysis, which we believe incorrectly de-emphasized the importance of each consumer's residence by (1) focusing on the breach of contract claims that require no reliance, even though the class alleged numerous other claims that do, *id.* at 297; and (2) emphasizing where the defendant "maintained" the contracts (Texas) rather than where the goods were bought and sold (forty other states), *id.* at 301.

**73.** *See Schein,* 102 S.W.3d at 693–94.

**74.** *See Bridgestone/Firestone, Inc.,* 288 F.3d at 1015.

**75.** *See Schein,* 102 S.W.3d at 697–99.

**76.** The plaintiffs in *Schein* did not even argue for a nationwide class if the laws of all fifty states applied; thus, the Court's conclusion that "[f]or this reason, the plaintiffs have failed to show that legal issues predominate" may refer to either the lack of effort or the prolixity of laws. *See Schein,* 102 S.W.3d at 697–99; *see also Uncertifiable?, supra* note 58, at 477, 501–02 (suggesting adoption of a per se rule against nationwide class actions involving the laws of all fifty states, as the possibility of certification is so small and the difficulties in management so great).

**77.** *See Bernal,* 22 S.W.3d at 435.

**78.** Boat decks were constructed of plywood dipped in an aqueous sealcoat from 1987 to 1991, pressure-treated plywood from 1992 to 1995, and aluminum from 1996 to 1998.

ferent brochures,[79] a jury would have to make individual findings regarding Tracker Marine's state of mind for every possible combination of model, brochure, and year.[80] Moreover, a number of states require proof of reliance (the consumer's state of mind), a highly individual issue uniquely unsuited for class treatment.[81]

Fourth, although consumer protection suits are common, the application asserted here is novel. The artful (perhaps ingenious) primary claim by the class is that Tracker Marine's brochures were deceptive because of what they failed to disclose: that the boats were "unsuited for use in a maritime environment." In other words, Tracker Marine's brochures should have said "these boats are no good in water." Pleading the claim this way eliminates most fact questions on reliance—surely every buyer relied on the omission, as no one would buy with that knowledge. But the parties' filings do not address which states would impose a duty to make so unique a disclosure.[82] Moreover, claims that a product is unfit for its intended use are already addressed by contract, warranty, and product-liability law; it is unclear whether most states would allow every unfitness claim to be converted into consumer fraud.[83] Without answers to these questions, we cannot know whether common issues will predominate.

Finally, even if all fifty statutes could be sorted into general categories, it is unlikely a single judge could properly try them, or a single jury properly apply them. The Texas statute consists of 27 sections, and there are hundreds of cases in which lawyers and judges have grappled with its construction and application. Undoubtedly lawyers and judges from Nebraska to Alaska have similar problems with their own statutes. The class counsel and trial judge in this case are as experienced as any (and more than most), but it is unlikely any lawyer or judge could grasp the shades and nuances of so many laws, thus providing a "fair and efficient adjudication" as required for common issues class actions.[84]

### Furthermore . . .

■ Furthermore, there are several reasons why the trial court's certification order must be reversed even if the law of only one state applied. While we hesitate to pile on criticisms, we take note of the frustration often caused by interlocutory appellate opinions that, as one writer has noted, settle some questions but never all:

[C]ourts often assert that certification is improper . . . because plaintiffs submitted inadequate trial plans, jury instructions, or proposed management tech-

---

**79.** The class representatives' interrogatory answers asserted thirty different misrepresentations, which they now assert fall into four basic categories: the plywood used in the boats was waterproof (1987–88), made of the highest quality materials (1987–88, 1992–94), marine panel plywood (1991–93), and would last a lifetime (1992–93). They concede there were no affirmative representations to consumers in 1989–90.

**80.** For example, one of the class representatives bought a 1988 boat based on a 1987 brochure.

**81.** See Castano, 84 F.3d at 745; Sheldon, 22 S.W.3d at 455 (holding need to inquire into

each class member's state of mind defeated any benefits of class action)

**82.** See Castano, 84 F.3d at 742 n. 15 (5th Cir.1996) (noting states impose varying standards to determine when there is a duty to disclose).

**83.** See In re Rezulin Prods. Liability Litigation, 210 F.R.D. 61, 67 (S.D.N.Y.2002) (questioning whether product liability suit could be recharacterized as consumer fraud class action).

**84.** See Uncertifiable?, supra note 58, at 502.

niques. When plaintiffs follow one court's trial plan suggestion, however, the next court finds yet another deficiency and again denies certification.[85]

Thus, we conclude by noting several problems that appear to render certification unsustainable no matter how many times this case shuttles between our courts.

First, there is almost no history to this litigation. As a result, the evidence is still being developed, trial strategies and issues are changing, and appellate review of novel legal questions has yet to occur. It is hard to say whether common issues will actually predominate in these cases before any of them ever go to trial.[86] In such circumstances, trial judges should proceed with extreme caution when considering a trial of more than one claim at a time.[87]

The trial judge expressed concern that, if these claims had to be tried one at a time, they would never be tried at all. But certification is not merely a vehicle to make sure no claim, however small, goes untried; if that were the sole test, our limited resources might be diverted to trying claims that are frivolous or trifling.[88] Nor are the claims here that small—according to class counsel they amount to several thousand dollars each.[89] More important, *Schein* urges us to define efficiency by looking to market models rather than central-planning models.[90] A few individual trials will show whether these claims are viable,[91] and whether Tracker Marines customers have any interest in them.[92] Most consumer protection statutes provide substantial incentives for individual suits; consumers in Texas, for example, may recover treble damages plus attorney's fees.[93] If that bait is not enough, perhaps the fish are just not interested.

Second, it will not be easy to moor every claim to its applicable state-law berth. The Restatement choice-of-law analysis is fact-specific, so each change in the facts may change the result.[94] It will no doubt

---

85. *Id.* at 477.

86. *See Castano,* 84 F.3d at 745 n. 18, 747, 749 (finding court could not know whether common issues predominate without track record of individual trials).

87. *See In re Bristol–Myers Squibb Co.,* 975 S.W.2d 601, 603 (Tex.1998).

88. *See Cox v. Zale Del., Inc.,* 239 F.3d 910, 916 (7th Cir.2001) (noting that frivolous and nuisance claims are not unusual "when a class action is in the offing"); *Gen. Motors v. Bloyed,* 916 S.W.2d 949, 953, 956 (Tex.1996) (affirming settlement based on coupon most class members could not use as there was evidence they suffered little injury); Scott Brister, et al., Texas Pretrial Practice 6:618 (revised 2002) (noting class actions, if carried *to extreme, may encourage litigation of tri*fling matters with little benefit to anyone except counsel).

89. *Cf. Schein,* 102 S.W.3d at 699–701 (finding no evidence consumer claims for defective software that cost $5,000 would not be

brought, given availability of additional damages and attorney's fees).

90. *Id.*

91. *See Siebenmorgen v. Hertz,* No. 14–97–01012–CV, 1999 WL 21299, *1 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (not designated for publication) (finding certification moot after jury rejected representative's claim at individual trial).

92. *See Remington Arms Co. v. Luna,* 966 S.W.2d 641, 644 (Tex.App.-San Antonio 1998, pet. denied) (affirming denial of certification as absence of litigation over alleged defect requiring $70 repair might demonstrate buyers' lack of interest in claim).

93. Tex. Bus. & Com.Code § 17.50(b), (d).

94. *See Hughes Wood,* 18 S.W.3d at 204–05 (stating that determination of state contacts involves a factual inquiry); Restatement (Second) of Conflict of Laws § 148, cmt. j, at pages 448–49 (1971).

be the case that some class members shopped in one state and bought in another; others may have shopped in several states before making up their minds. Many of the most important contacts (such as where a buyer picked up, read, or relied on a brochure) would turn entirely on each buyer's recollection; the only means of challenging that recollection (and thus the law applicable to each claim) would be cross-examination. Tracker Marine cannot cross-examine a claims form; restricting it to that device would improperly deny its right to challenge applicable law.[95] Thus, even if this action is limited to claims governed by the law of a single state, mini-trials will be required for many buyers to ascertain which state that is.

Third, the trial court's order certifies several competing theories of damages that raise many individual questions:

- *Benefit-of-the-bargain.* This claim asserts economic injury at the moment of purchase because the boats were not as represented. In other words, buyers who knew about the wood in these boats would pay less than the class members did, as they would fear future problems from rotting. The Seventh Circuit has opined that most states would not recognize such a damage claim;[96] it also looks suspiciously like a claim for fear of future injury to property, which Texas has rejected.[97]

- *Cost of repair.* The trial court does not indicate how a jury could determine what repair costs were reasonable and necessary without inspecting each boat for rotten wood.[98] Nor is there any explanation why those who sold their boats (perhaps half) should receive compensation rather than current owners who actually need the repairs.

- *Rescission.* Most troubling is the claim for rescission, a remedy that requires undoing the consumer transaction.[99] It is one thing to send absent class members a check if they fail to opt out; it would be quite another to come take their boats.

- *Choice of damages.* Although the record contains no analysis of which states allow which damages, it seems unlikely that Texas is the only one granting consumers a choice among them.[100] In such states, there is an inherent conflict between those whose repair costs exceed benefit-of-the-bargain damages (and thus would prefer the former) and those whose repair costs are smaller (and thus would prefer the latter); yet we cannot know which buyers are which until their

**95.** *See Bernal,* 22 S.W.3d at 435–36 (holding class action cannot unduly restrict presentation of viable claims or defenses without a party's consent); *see also* TEX. GOV'T.CODE § 22.004(a) and TEX.R. CIV. P. 815 (stating procedural rules may not abridge, enlarge, or modify substantive rights of a litigant).

**96.** *See Bridgestone/Firestone,* 288 F.3d at 1017 (indicating most states would not entertain consumer fraud claim based on lost economic value due to failure to disclose product's flaws if product still operated properly).

**97.** *See City of Tyler v. Likes,* 962 S.W.2d 489, 500 (Tex.1997).

**98.** The class representatives' argument that all plywood on the boats should be replaced (whether rotted or not) is merely a restatement of their benefit-of-the-bargain claim, not a claim for cost of necessary repairs.

**99.** *See, e.g.,* TEX. BUS. & COM.CODE § 2.608(b) (requiring revocation of sale of goods before any substantial change in their condition); *Davis v. Estridge,* 85 S.W.3d 308, 311 (Tex. App.-Tyler 2001, pet. denied) (requiring tender of property received and value of benefits derived from possession for equitable rescission).

**100.** *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997).

individual repair needs are assessed.[101]

Fourth, the certification order assures us that several key issues (such as who saw the brochures, and when they discovered their claims) can be handled "if necessary" through post-judgment proof-of-claim forms or questionnaires. We recognize there is some authority for doing so.[102] But we disagree that a party's right to confront and cross-examine opposing witnesses can always be replaced by an affidavit.[103] Obviously, Tracker Marine does not have to take each buyer's word for it that they saw an offending brochure (especially if a jury finds only some were deceptive) and only recently noticed any rotten wood. But discovery cannot be obtained from unnamed class members as if they were parties.[104] When fact issues turn entirely on credibility, the class action bar on discovery renders certification inappropriate.[105]

The novelty and complexity of these issues counsels against any sort of mass trial until some of them are settled. The question here is not just whether a class action is superior to individual trials, but whether a class action is superior *before* any individual trials. It would be. extremely expensive to try each of these 74,000 claims separately; it would also be extremely expensive to try them all together on a theory that requires reversal on appeal.

### Conclusion

■ As noted in *Schein*, it is not for us to say that no class can be certified in this case, as that decision is for the trial court in the first instance.[106] New pleadings, new facts, and subsequent developments in the law (like those that have frustrated the trial court so far) may make certification possible. But given the novelty and complexity of this litigation, it appears at present that joining all these claims together will result in either 74,000 mini-trials or one large mistrial.

It is awkward declaring a trial judge abused her discretion on the basis of standards that, while not new, were at least not as clear at the time that discretion was exercised. But considering those standards as we must, we once again find the trial court's certification order an abuse of discretion.

We reverse the certification order and remand the case for further proceedings.

**101.** Because of the conflict, dismissal of either claim might require notice to class members under Rule 42(e) and indicate a class action is inappropriate (as it necessitates surrender of substantial rights). *See Schein,* 102 S.W.3d at 694–95.

**102.** *See Nat'l W. Life Ins. Co. v. Rowe,* 86 S.W.3d 285, 298 (Tex.App.-Austin 2002, pet. filed).

**103.** *See Schein,* 102 S.W.3d at 694–95 (holding defendant entitled to cross-examine individual claimants when amount of damages cannot readily be ascertained,); *Bernal,* 22 S.W.3d at 437 (finding defendant was entitled to individual determinations of causation and damages); *Becton Dickinson & Co. v. Usrey,* 57 S.W.3d 488, 497 (Tex.App.-Fort Worth 2001, no pet.) (rejecting procedure using claim forms to support no-evidence summary judgment, and then severing for de novo trial claims as to which defendant could create fact question).

**104.** *See* Tex.R. Civ. P. 42(f).

**105.** *See E & V Slack, Inc. v. Shell Oil Co.,* 969 S.W.2d 565, 571 (Tex.App.Austin 1998, no pet.) (holding defendants need to discover which class members signed releases justified denial of certification).

**106.** *Schein,* 102 S.W.3d at 700–01.