Affirmed and Opinion filed _____________, 2002


















Reversed and Remanded and Opinion filed April 10, 2003.                                                  

 

 

 

 

 

 

 

 

In
The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00094-CV  

____________

 

TRACKER
MARINE, L.P., Appellant

 

V.

 

KEN
OGLE AND RANDY BACCUS, AS CLASS REPRESENTATIVES, Appellees

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the 127th District Court

                                                           Harris
 County, Texas                       

Trial
Court Cause No. 98-22169




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



O P I N I O N

Two pontoon-boat buyersCone from Texas,
one from TennesseeCbrought suit on behalf of themselves
and 74,000 others against appellant Tracker Marine, L.P., the manufacturer, alleging
misrepresentations regarding the plywood used on their boats.  The trial court certified their class action
in January 2000, without indicating how these claims would be tried.  After Tracker Marine filed an interlocutory
appeal, the Texas Supreme Court mandated such plans in Southwestern Refining Co. v. Bernal.[1]  Accordingly, we reversed.[2] 

On remand, the trial court again certified the class on December
 17, 2001, this time including
a trial plan.  Tracker Marine again
appealed, and during the appeal the Supreme Court again issued an opinion, Henry
Schein, Inc. v. Stromboe,[3]
that renders the trial court=s
certification unsustainable.  Accordingly,
we must again reverse.

Background

The certified class consists of consumers
who bought new Tracker Marine pontoon boats between 1987 and 1998 constructed
in whole or part using wood.  Tracker
Marine sold approximately 74,000 of such boats through independent retail
dealers in all fifty states and several foreign countries.  The class alleges the plywood used on the
deck, furniture, or transom of some models has a propensity to rot when exposed
to waterCas boats
often are.  

But the class allegations contain no
contract, warranty, or product liability claims.  Instead, the class asserts only affirmative
misrepresentations or omissions in Tracker Marine=s
brochures (also distributed through retail dealers) that allegedly violate the
Missouri Unlawful Merchandising and Practices Act.[4]  Even though the class sought was nationwide,
the plaintiffs argued only Missouri
law applied, as Tracker Marine made all boats and issued all brochures there.

            The trial court granted
certification, finding common questions of law and fact predominated over
individual questions, and a class action was superior to other available
methods of adjudication.[5]  Although we review the trial court=s order for abuse of discretion, we do
not indulge every presumption in its favor, as compliance with class action requirements
must be demonstrated rather than presumed.[6]  We also must evaluate “the claims, defenses,
relevant facts, and applicable substantive law.”[7]
 

These standards conflict with
several earlier opinions in which this Court applied different standards. Clearly,
the Supreme Court’s opinion in Schein requires us to abandon our previous practice indulging
presumptions in favor of certification.[8]  It also requires us to abandon our practice postponing
choice-of-law questions until after certification,[9] as
we can hardly evaluate the claims, defenses, or applicable law (as Schein requires) without
knowing what that law is.[10]  Thus, we proceed first to an analysis of the
choice of law.

Comparing the Laws

Tracker Marine challenges the trial
court’s conclusion that Missouri
law applies to all class members’ claims. 
The determination of which state=s
law applies is a question of law for the court;[11]
we review it de novo.[12]  The analysis must be conducted on an
individual basis;[13]
a nationwide class is not entitled to a “looser” analysis merely because
applying one state’s law would be easier than applying many.[14]  Nor can class members opt in or out of
applicable law; plaintiffs are bound by the law that governs their claims even
if they would prefer that a different law apply.[15]

In reviewing the trial court’s decision,
we must first decide whether Missouri
law conflicts with the laws of other interested states, as there can be no harm
in applying Missouri law if there
is no conflict.[16]  The class representatives bear the burden of
establishing the prerequisites for class treatment, so they must present an
extensive analysis of state law evaluating any differences.[17]
 

All fifty states have enacted
consumer protection statutes authorizing a state agency or private parties to prosecute
consumer fraud or deceptive trade practices. 
However, the scope, procedures, and remedies of those statutes vary
considerably:

·         
Private right of action.  Although most states allow individuals to
bring private actions, at least one does not.[18]  Nebraska
and New York require Apublic interest impact@ before allowing private actions.[19]  Nevada
allows private actions only by the elderly or disabled.[20]

·         
Class actions.  Several states prohibit class actions under
their consumer protection statutes.[21]  Others limit the claims that can be certified,[22]
the damages recoverable by a class,[23]
or the consumers who can be class members.[24]

·         
Limitations.  The time allowed by the states for bringing
consumer protection claims varies from one year[25]
to six years.[26]
 Accrual runs from Aoccurrence@
in some states,[27] 
and from Adiscovery@ in others.[28]  Several states toll limitations during the pendency of consumer protection actions by the state.[29]


·         
Violations.  Many statutes contain a “laundry list” of
specific violations;[30]
others have only broad definitions without limiting the specific acts included.[31]

·         
Scienter.  The mental state required for a violation
varies from intentionally[32]
to knowingly[33]
to negligence[34]
to no apparent scienter requirement at all.[35]        

·         
Reliance.  Some states require reliance on the alleged
violations;[36]
others do not.[37]
 Still others require proof of causation rather
reliance,[38]
even though they are very nearly the same thing.[39]      

·         
Exemplary damages.  Some states prohibit exemplary damages under
their consumer protection statutes.[40]  Others allow them in amounts within the
discretion of the fact-finder,[41]
or according to multipliers.[42]  In a few states, additional remedies are
available for the elderly or disabled.[43]

Obviously, the conflicts among these
laws are substantial; we are hardly the first court to note these differences.[44]  Thus, we cannot affirm the application of Missouri
law on the basis that all consumer protection statutes are pretty much alike.  Instead, to review how the class claims will
be tried, we must first review which law will apply.

Choosing the Law

The Due Process Clause limits the
extent to which one state’s law can be applied to claims that arise in many states.[45]  In Schein,
the Texas Supreme Court stated that ATexas
. . . does not apply the law of the state where a defendant is headquartered to
every claim for economic damages that can be alleged.@[46]  Indeed, Texas
courts have usually applied our statute to consumer complaints that arose here regardless
of the defendant’s headquarters.[47]  The notion of applying the law of the
manufacturer’s domicile to all consumer complaints is, according to the Seventh
Circuit, a “novelty.”[48]  

The class argues the Supreme Court’s
statement in Schein is inapplicable because the claims
alleged there (in addition to consumer protection) were breach of contract, warranty,
fraud, and everything else in the contort kitchen sink.  We doubt the choice-of-law pronouncement in Schein can be read so narrowly.  But even if we were sailing on uncharted
waters, we believe a traditional choice-of-law analysis would arrive at the
same port.

Texas
has adopted the Restatement=s
approach to choice-of-law questions, asking which state has the most
significant relationship to the issue to be resolved.[49]  Generally, the contacts we must consider and standards
we must apply are those found in the Restatement section specifically addressed
to that particular issue.[50]  In this case, the primary claim is economic
harm allegedly caused by Tracker Marine=s
misrepresentations to customers.  The
Restatement addresses such claims in section 148, entitled AFraud and Misrepresentation.@

Section 148 contains two
subsections.  The first governs cases in
which all actions (from misrepresentation to reliance and injury) take place in
one state.  In such cases, the law of
that state generally applies.[51]  For class members who lived in Missouri
and had their only contacts with Tracker Marine there, it is hard to imagine
any other state that would have a more significant relationship.  For them, Missouri
law would appear to apply.

But the analysis
is different for all the other class members. 
Section 148(2) governs transactions that take place in more than one
state, and requires us to consider Asuch
of the following contacts, among others, as may be present@:

(a) the place, or places, where the plaintiff acted in
reliance upon the defendant=s
representations,

(b) the place where the plaintiff
received the representations,

(c) the place where the defendant
made the representations,

(d) the domicile, residence, nationality, place of
incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of
the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance
under a contract which he has been induced to enter by the false
representations of the defendant.[52]  

 

Tracker Marine
concedes its Missouri domicile implicates
the third and (partially) fourth contacts. 
But it points out that all others will usually point to the state where
each class member resides, assuming that is where they shopped for and bought
their boats.

As is often the
case, the Restatement provides no firm guidance as to how we should analyze
these contacts; indeed, it provides that A[n]o
definite rules as to the selection of the applicable law can be stated.@[53]  Nevertheless, the comments to Restatement
section 148 suggest an analysis that points well away from Missouri.  

First, the place
where the defendant made representations and the place where the plaintiff
received them are of equal importance, but both are outweighed by the place
where the plaintiff acted in reliance.[54]  It is undisputed that most buyers would have
received brochures and acted on them outside Missouri.

Second, the
residence of the plaintiff is more important than that of the defendant, as the
financial loss involved will usually be of greatest concern there.[55]  Consumer protection statutes are intended to
protect consumers; one would expect the state where those consumers reside
would have the most significant interest.[56]  

Finally, the
Restatement concludes with a general comment endorsing application of the law
of each state where a class member resides:

If
any two of the above-mentioned contacts, apart from the defendant=s domicile, state of incorporation or
place of business, are located wholly in a single state, this will usually be
the state of the applicable law with respect to most issues.  So when the plaintiff acted in reliance upon
the defendant=s
representations in a single state, this state will usually be the state of the
applicable law, with respect to most issues, if (a) the defendant=s representations were received by the
plaintiff in this state, or (b) this state is the state of the plaintiff=s domicile or principal place of
business, or (c) this state is the situs of the land
which constituted the subject of the transaction between the plaintiff and the
defendant, or (d) this state is the place where the plaintiff was to render at
least the great bulk of his performance under his contract with the defendant.  The same would be true if any two of the
other contacts mentioned immediately above were located in the state in
question even though this state was not the place where the plaintiff received
the representations.[57]  

For class
members located outside Missouri,
applying Missouri law would stand
this part of the Restatement on its head.[58]

Class counsel
relies instead on the general principles set out in section 6 of the
Restatement.[59]  Those principles are:

(a)
the needs of the interstate and international systems, 

(b)
the relevant policies of the forum, 

(c) the relevant policies of other interested states and the
relative interests of those states in the determination of the particular
issue, 

(d)
the protection of justified expectations, 

(e)
the basic policies underlying the particular field of law, 

(f)
certainty, predictability and uniformity of result, and 

(g) ease in the determination and application of the law to
be applied. [60]

As noted above, the Restatement generally
requires us to rely less on the general principles (section 6) than on the
application of those principles to the particular issue to be resolved (section
148).[61]  But the analysis under either section should
generally point in the same direction, as the specific sections were drafted as
applications of the general principles.

First, applying
the law of each consumer=s
state would protect the parties’ justified expectations.  The consumers here got both brochures and
boats through independent dealers located in the fifty states.  The parties quite reasonably assume most
consumers shopped and bought in the state where they live; using the same
reasoning, we would also expect them to sue there, too.  Having shopped, bought, and sued in one
state, surely they would not expect the law of some other state to apply.[62]  Nor could Tracker Marine have expected
otherwise; by setting up marketing and distribution systems in states other
than Missouri, it purposefully
availed itself of the benefits and protections of their laws.[63]  

Second, assuming
again that consumers generally shop and sue in the same state, allowing that
forum to apply its own laws would make the determination and application of law
easier.[64]

Third, many states
still follow the lex loci delicti
rule, applying the law of the state in which the harm occurred.[65]  In consumer fraud cases, harm occurs where
the consumers are defrauded.[66]  Applying the same rule in Restatement states
like Texas enhances certainty,
predictability and uniformity of result.

            Fourth,
applying the law of the states where consumers live encourages interstate and
international trade.  Fraud hampers
trade; traders who are fooled once may be hesitant to trade again.  Applying the law of a manufacturer’s state to
all consumer transactions might encourage a “race to the bottom,” with some
states attracting business by adopting lenient standards, and unscrupulous
sellers rushing there as a result.[67] 

            The
class argues the policies of all interested states and of consumer law itself
would best be met by applying Missouri’s
law, because it is one of the most liberal consumer protection statutes in the
country.  In the first place, if Missouri’s
law satisfied the interests of all other states, it is strange they choose to
enact laws that were different. 
Moreover, taking this argument to its logical conclusion, the most extreme
law would always apply.  This might
simplify choice-of-law analyses, but it reflects a simplistic view of the
policies behind such laws.

            Like
most laws, consumer protection statutes represent a balance of competing
interests.  The Texas
statute, for example, provides remedies both for consumers subjected to
deceptive practices and retailers subjected to frivolous consumer complaints.[68]  When states adopt differing attempts to
strike a fair balance between the interests of manufacturers and consumers, our
job is not to decide which policy overrides the other, but instead to give
greater weight to the other Restatement factors.[69]  It is hard to see how the interests of each
state could be met any better than by allowing each to apply its own laws.

A recent and
remarkably similar federal case confirms our analysis.  In Lyon v. Caterpillar, a boat-engine
buyer filed a nationwide class action alleging misrepresentations regarding gas
consumption, and asserted that the law of Illinois
(where the manufacturer was located) governed all consumer fraud claims.[70]  Relying on Restatement section 148(2), the
court instead applied the law of each state where a purchaser resided or bought
a boat.[71]  

            Thus,
while Missouri law will apply to
claims by most of those who bought boats in that state, the class
representatives have failed to show us it will apply to their own claims or
those of most others.[72]  The differences in state law cannot be
concealed in a throng.[73]  The trial court erred by finding Missouri
law applicable to all claims by the class. 

Nevertheless . . .

            Nevertheless,
the trial court found that even if the laws of all fifty states apply,
certification was appropriate because common issues predominate.  We disagree for five reasons.

            First,
“[n]o class action is proper unless all litigants are governed by the same
legal rules.”[74]  The Texas Supreme Court in Schein noted that
“[s]tate and federal courts have overwhelmingly
rejected class certification when multiple states' laws must be applied.”[75]  Although there is room to argue this was not
an absolute prohibition,[76] the
Supreme Court’s characterization of the trend as “overwhelming” (not to mention
the 68 cases listed in support) clearly suggests which way the tide is running.

            Second,
the amended certification order indicates the fifty consumer protection
statutes could be divided into approximately six subgroups.  But the plan does not indicate what those
groups were; at oral argument, neither counsel had any idea either.  Certification cannot be based on mere assurances
or secret trial plans.[77]

            Third,
the states are of too many minds as to scienter and
reliance.  As noted above, the statutes addressing
scienter (the manufacturer’s state of mind) punish
conduct ranging from intentional to knowing to negligent.  As the class includes boats sold over a
12-year period with three different deck types[78]
and many different brochures,[79]
a jury would have to make individual findings regarding Tracker Marine’s state
of mind for every possible combination of model, brochure, and year.[80]  Moreover, a number of state’s require proof
of reliance (the consumer’s state of mind), a highly individual issue uniquely unsuited
for class treatment.[81]

Fourth, although
consumer protection suits are common, the application asserted here is
novel.  The artful (perhaps ingenious)
primary claim by the class is that Tracker Marine’s brochures were deceptive
because of what they failed to disclose: 
that the boats were “unsuited for use in a maritime environment.”  In other words, Tracker Marine’s brochures
should have said “these boats are no good in water.”  Pleading the claim this way eliminates most
fact questions on reliance—surely every buyer relied on the omission, as no one
would buy with that knowledge.  But the
parties’ filings do not address which states would impose a duty to make so
unique a disclosure.[82]  Moreover, claims that a product is unfit for
its intended use are already addressed by contract, warranty, and
product-liability law; it is unclear whether most states would allow every
unfitness claim to be converted into consumer fraud.[83]  Without answers to these questions, we cannot
know whether common issues will predominate.

            Finally,
even if all fifty statutes could be sorted into general categories, it is
unlikely a single judge could properly try them, or a single jury properly apply
them.  The Texas
statute consists of 27 sections, and there are hundreds of cases in which lawyers
and judges have grappled with its construction and application.  Undoubtedly lawyers and judges from Nebraska
to Alaska have similar problems
with their own statutes.  The class
counsel and trial judge in this case are as experienced as any (and more than
most), but it is unlikely any lawyer or judge could grasp the shades and
nuances of so many laws, thus providing a “fair and efficient adjudication” as
required for common issues class actions.[84]

Furthermore . . .

            Furthermore,
there are several reasons why the trial court’s certification order must be
reversed even if the law of only one state applied.  While we hesitate to pile on criticisms, we
take note of the frustration often caused by interlocutory appellate opinions
that, as one writer has noted, settle some questions but never all:

[C]ourts often assert that certification is improper . . .
because plaintiffs submitted inadequate trial plans, jury instructions, or
proposed management techniques.  When
plaintiffs follow one court's trial plan suggestion, however, the next court
finds yet another deficiency and again denies certification.[85]

 

Thus, we conclude by noting several
problems that appear to render certification unsustainable no matter how many
times this case shuttles between our courts. 


            First,
there is almost no history to this litigation. 
As a result, the evidence is still being developed, trial
strategies and issues are changing, and appellate review of novel legal
questions has yet to occur. It is hard to say whether
common issues will actually predominate in these cases before any of them ever go
to trial.[86]  In such circumstances, trial
judges should proceed with extreme caution when considering a trial of more
than one claim at a time.[87]  

            The trial judge expressed concern that, if these claims
had to be tried one at a time, they would never be tried at all.  But certification is not merely a vehicle to
make sure no claim, however small, goes untried; if that were the sole test,
our limited resources might be diverted to trying claims that are frivolous or
trifling.[88]  Nor are the claims here that small—according
to class counsel they amount to several thousand dollars each.[89]  More important, Schein urges us to define
efficiency by looking to market models rather than central-planning models.[90]  A few individual trials will show whether
these claims are viable,[91] and
whether Tracker Marine’s customers have any interest in them.[92]  Most consumer protection statutes provide substantial
incentives for individual suits; consumers in Texas, for
example, may recover treble damages plus attorney’s fees.[93]  If that bait is not enough, perhaps the fish
are just not interested.

            Second,
it will not be easy to moor every claim to its applicable state-law berth.  The Restatement choice-of-law analysis is
fact-specific, so each change in the facts may change the result.[94]  It will no doubt be the case that some class
members shopped in one state and bought in another; others may have shopped in
several states before making up their minds. 
Many of the most important contacts (such as where a buyer picked up,
read, or relied on a brochure) would turn entirely on each buyer’s
recollection; the only means of challenging that recollection (and thus the law
applicable to each claim) would be cross-examination.  Tracker Marine cannot cross-examine a claims
form; restricting it to that device would improperly deny its right to
challenge applicable law.[95]  Thus, even if this action is limited to claims
governed by the law of a single state, mini-trials will be required for many
buyers to ascertain which state that is.

            Third,
the trial court’s order certifies several competing theories of damages that
raise many individual questions:  

·         
Benefit-of-the-bargain.  This claim asserts economic injury at the
moment of purchase because the boats were not as represented.  In other words, buyers who knew about the
wood in these boats would pay less than the class members did, as they would
fear future problems from rotting.  The
Seventh Circuit has opined that most states would not recognize such a damage
claim;[96]
it also looks suspiciously like a claim for fear of future injury to property,
which Texas has rejected.[97]  

·         
Cost of
repair.  The trial court does not
indicate how a jury could determine what repair costs were reasonable and
necessary without inspecting each boat for rotten wood.[98]  Nor is there any explanation why those who
sold their boats (perhaps half) should receive compensation rather than current
owners who actually need the repairs.  

·         
Rescission.  Most troubling is the claim for rescission, a
remedy that requires undoing the consumer transaction.[99]  It is one thing to send absent class members a check if they
fail to opt out; it would be quite another to come take their boats.          

·         
Choice of
damages.  Although the record
contains no analysis of which states allow which damages, it seems unlikely
that Texas is the only one
granting consumers a choice among them.[100]  In such states, there is an inherent conflict
between those whose repair costs exceed benefit-of-the-bargain damages (and
thus would prefer the former) and those whose repair costs are smaller (and
thus would prefer the latter); yet we cannot know which buyers are which until
their individual repair needs are assessed.[101]

            Fourth,
the certification order assures us that several key issues (such as who saw the
brochures, and when they discovered their claims) can be handled “if necessary”
through post-judgment proof-of-claim forms or questionnaires.  We recognize there is some authority for
doing so.[102]  But we disagree that a party’s right to
confront and cross-examine opposing witnesses can always be replaced by an
affidavit.[103]  Obviously, Tracker Marine does not have to
take each buyer’s word for it that they saw an offending brochure (especially
if a jury finds only some were deceptive) and only recently noticed any rotten
wood.  But discovery
cannot be obtained from unnamed class members as if they were parties.[104]  When fact issues turn
entirely on credibility, the class action bar on discovery renders
certification inappropriate.[105]  

            The
novelty and complexity of these issues counsels against any sort of mass trial
until some of them are settled.  The
question here is not just whether a class action is superior to individual
trials, but whether a class action is superior before any individual trials. 
It would be extremely expensive to try each of these 74,000 claims
separately; it would also be extremely expensive to try them all together on a
theory that requires reversal on appeal. 


Conclusion

As noted in Schein, it is not
for us to say that no class can be certified in this case, as that decision is
for the trial court in the first instance.[106]  New pleadings, new facts, and subsequent
developments in the law (like those that have frustrated the trial court so
far) may make certification possible.  But
given the novelty and complexity of this litigation, it appears at present that
joining all these claims together will result in either 74,000 mini-trials or
one large mistrial.

It is awkward
declaring a trial judge abused her discretion on the basis of standards that,
while not new, were at least not as clear at the time that discretion was
exercised.  But considering those
standards as we must, we once again find the trial court’s  certification order an abuse of discretion.  

We reverse the
certification order and remand the case for further proceedings.

 

 

 

                                                                        /s/        Scott Brister

Chief Justice

 

 

 

Judgment rendered and Opinion filed April 10, 2003.

Panel consists of Chief Justice Brister and Justices
Hudson and Fowler.











[1]
22 S.W.3d 425, 435 (Tex.  2000).





[2]
Tracker Marine v. Ogle, No. 14‑00-00230-CV, 2000 WL 1588115 (Tex.
App.CHouston
[14th Dist.] Oct. 26, 2000,
no pet.) (not designated for publication).





[3]
46 Tex. Sup. Ct. J. 103, 2002 WL
31426407 (Oct. 31, 2002).





[4]
See Mo.
Rev. Stat. §§ 407.010–.025.





[5]
See Tex. R. Civ. P.
42(b)(4).





[6]
See Schein, 2002 WL 31426407, at *11. 






[7]
Id.





[8]
See, e.g., Charlie Thomas Courtesy
Leasing, Inc. v. Taylor,
44 S.W.3d 684, 687 (Tex. App.—Houston
[14th Dist.] 2001, no pet.); Entex, a
Div. of Noram Energy Corp. v. City of Pearland, 990
S.W.2d 904, 909 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Reserve Life Ins. Co. v. Kirkland, 917
S.W.2d 836, 839 (Tex. App.—Houston [14th Dist.] 1996, no pet.); Morgan v. Deere Credit, Inc., 889 S.W.2d
360, 365 (Tex. App.—Houston [14th Dist.] 1994, no writ).





[9]
See Weatherly v. Deloitte & Touche, 905
S.W.2d 642, 650 (Tex. App.CHouston
[14th Dist.] 1995, writ dism=d
w.o.j.); Angeles/Quinoco
Sec. Corp. v. Collison, 841 S.W.2d 511, 517 (Tex.  App.CHouston
[14th Dist.] 1992, no writ).  These
opinions appear to have been based on the presumption that, if choice-of-law
problems later proved intractable, the class could be decertified then.  See Angeles/Quinoco,
841 S.W.2d at 517.  The Supreme Court rejected this Acertify now and worry later@ approach in Southwestern Ref. Co.,
Inc. v. Bernal, 22 S.W.3d 425, 433 (Tex.
2000).





[10]
The federal courts follow this same rule. 
See Spence v. Glock, 227 F.3d 308, 313
(5th Cir. 2002) (holding trial court must know which law will apply before
making predominance determination); Castano
v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996) (same).  Federal cases interpreting the similar
federal class action requirements are persuasive authority.  Bernal, 22 S.W.3d at 433.





[11]
Torrington Co. v. Stutzman, 46 S.W.3d 829, 848
(Tex.  2000).





[12]
See Minn. Min. & Mfg. Co. v. Nishika Ltd., 955 S.W.2d 853, 856 (Tex.  1996).





[13]
See Lutheran Brotherhood v. Kidder
Peabody & Co., Inc., 829 S.W.2d 300, 310 (Tex. App.—Texarkana 1992,
writ granted w.r.m.).





[14]
See Phillips Petroleum Co. v. Shutts,
472 U.S. 797, 821–22
(1985).





[15]
Id.
at 820.





[16]
Id.
at 815.





[17]
See Spence, 227 F.3d at 313; see also Schein, 2002 WL 31426407, at *16.





[18]
See Molo Oil Co. v. River City Ford Truck Sales,
Inc., 578 N.W.2d 222, 229 (Iowa
1998) (holding no private cause of action under Iowa
consumer protection statute); see also Patterson v. Beall,
19 P.3d 839, 846 n.10 (Okla.
2000) (noting that Oklahoma did
not allow private actions until 1988).





[19]
See Nebraska: Neb. Rev. Stat. § 59-1601(2); New
 York: McKinney=s
Gen. Bus. Law § 349.





[20]
See Nev. Rev. Stat.  § 598.0977.





[21]
See e.g., Alabama: Ala. Code § 8-19-10(f); Georgia:
Ga. Code Ann. § 10-1-399(a); Louisiana:
La. Rev. Stat. Ann. §  51:1409; Mississippi:
Miss. Code Ann. § 75-24-15(4); Montana:
Mont. Code Ann. § 30-14-133(1); South
 Carolina: S.C.
Code Ann. § 39-5-140(a).





[22]
See e.g., Kansas: Kan. Stat. Ann. § 50-634(d) (limiting
class actions to certain consumer claims).





[23]
See, e.g., Idaho: Idaho Code § 48-608(1) (limiting class recovery
to actual damages); Kansas:
Kan. Stat. Ann. § 50-634(d)
(same); Michigan:  Mich.
Comp. Laws  § 445.911(3) (same); New
 Mexico:  N.M. Stat. Ann.  § 57-12-10(E) (same).





[24]
See, e.g., Connecticut: Conn. Gen. Stat. Ann. § 42-110g(b)
(limiting class actions to residents or consumers injured within the state).





[25]
See Louisiana: La. Rev. Stat. Ann. § 51:1409(E); Oregon: Or. Rev. Stat. § 646.638; Tennessee:
Tenn. Code  Ann. 
§ 47-18-110; Wyoming: Wyo. Stat. Ann. § 40-12-109.





[26]
See Michigan:
Mich. Comp. Laws  § 445.911(7).





[27]
See, e.g., Michigan:
Mich. Comp. Laws  § 445.911; Kentucky:
Ky. Rev. Stat.  Ann. § 367.220(5).





[28]
See, e.g., Alaska: Alaska Stat. § 45.50.531(f); Georgia: Ga. Code. Ann. § 10-1-401(a)(1).





[29]
See, e.g., Kentucky: Ky. 
Rev.  Stat. § 367.220(5); Nebraska:
Neb. Rev. Stat. § 59-1612; Oregon:
Or. 
Rev.  Stat. § 646.638(6);
Virginia: Va. Code Ann. §
59.1-204.1(B); Washington: Wash.  Rev. Code Ann. § 19.86.120.





[30]
See, e.g., Alabama: Ala. Code § 8-19-5; California:
Cal. Civ. Code § 1770; Michigan:
Mich. Comp. Laws Ann. § 445.903.





[31]
See, e.g., Illinois: 815 Ill. Comp. Stat. 505/2; New
 Jersey: N.J.
Stat. Ann. § 56:8-2; New York:
 McKinney=s Gen. Bus. Law § 349(a).





[32]
See, e.g., Arizona:
Ariz. Rev. Stat. § 44-1522; Delaware:
Del. Code Ann.  tit. 6, § 2513; Minnesota:
Minn. Stat. Ann.  § 325F.69; North Dakota:
N.D. Cent. Code § 51-15-02.





[33]
See, e.g., New
 Mexico: N.M.
Stat. Ann. § 57-12-2(D).





[34]
See, e.g., Kansas: Kan. Stat. Ann. § 50-627(b); Oklahoma:
Okla. Stat. tit. 15 § 753.





[35]
See, e.g., Connecticut:  Conn.
Gen. Stat. § 42-110g; Florida:
Fla. Stat. Ann. § 501.204; Louisiana:
La. Rev. Stat. Ann.  § 51:1405; North
 Carolina: N.C.
Gen. Stat. § 75-1.1(a); Ohio:
Ohio Rev. Code Ann. § 1345.02; Washington:
Wash. Rev. Code § 19.86.020.





[36]
See, e.g., Louisiana: Louisiana ex rel. Guste v. General Motors Corp., 370 So.2d 477, 489 (La.
1978); Pennsylvania: Weinberg v. Sun Co., Inc., 777 A.2d 442, 445 (Pa.
2001) (requiring proof of reliance and causation in false advertising claim). But
see Fay v. Erie Ins. Group, 723 A.2d 712, 714 (Pa.
1999) (requiring Acausal
connection to or reliance on@
alleged misrepresentations); Vermont:
 Vt. Stat. Ann. tit. 9, § 2461(b); Texas:
Tex. Bus & Com. Code §
17.50(a)(1); Wyoming: Wyo. Stat. Ann.  § 40-12-108(a).





[37]
See, e.g., Delaware: Del. Code Ann. tit. 6, § 2513(a); Illinois:
815 Ill. Comp. Stat. 505/2; Kansas:
Kan. Stat. ann. § 50-626 (b); Maryland:
Md. Code Ann., Comm. Law I §
13-302; Massachusetts: Sebago,
Inc.  v. Beazer
E., Inc., 18 F. Supp. 2d 70, 103 (D. 
Mass. 1998); Minnesota:
Minn. Stat. § 325F.69(1); Missouri:  State v. AreaCo
Inv. Co., 756 S.W.2d 633, 635–36 (Mo.
App. 1988); New Jersey: N.J. Stat. 
Ann.  § 56:8-2; North
 Dakota: N.D.
Cent. Code  § 51-15-02; Oregon:
 Banks v. Martin, 717 P.2d 1192,
1196 (Or. App. 1986); South Dakota:
S.D. Codified Laws § 37-24-6(1);  Tennessee:
Harvey v.  Ford Motor Credit Co., 1999 WL 486894, *2
(
Tenn. Ct. App. 1999) (not
designated for publication).





[38]
See, e.g., New York:
Stutman v. Chemical Bank, 709 N.Y.2d
892, 895–96 (2000); Texas: Cianfichi v. White House Motor Hotel, 921 S.W.2d 441,
443 (Tex.  App.—Houston
[1st Dist.] 1996, writ denied); Washington:
Pickett v.  Holland Am. Line-Westours, Inc., 35 P.3d 351, 360 (Wa.  2001).





[39]
See Cianfichi, 921 S.W.2d at 443-44. 





[40]
See, e.g., Maryland:
Hallowell v. Citaramanis, 613 A.2d 964, 970
(Md. Ct. App. 1991); South Dakota:
Wyman v. Terry Schulte Chevrolet, Inc., 584 N.W.2d 103, 107 (S.D. 1998).





[41]
See, e.g,, California:
Cal. Civ. Code  § 1780(a)(4); Connecticut:
Conn. Gen. Stat. Ann. §
42-110g(a); Idaho: Idaho Code § 48-608(1); Illinois:
815 Ill. Comp. Stat. 505/10a; Kentucky:  Ky. Rev.
Stat. § 367.220(1); Missouri:
Mo. Rev. Stat. § 407.025(1); Oregon:
Or. Rev. Stat. § 646.638(1); Rhode
 Island: R.I.
Gen. Laws § 6-13.1-5.2(a).





[42]
See, e.g., Alabama: Ala. Code § 8-19-10(a)(2); Colorado:
Col. Rev. Stat. §
6-1-113(2)(a)(III); Hawaii: Haw. Rev. Stat. § 480-13(b)(1); Louisiana:
La. Rev. Stat. Ann. §
51:1409(A);  Massachusetts:
Mass. Gen. Laws 93A § 9(3); Montana:
Mont. Code Ann. § 30-14-133(1); New
 Hampshire: N.H.
Rev. Stat. Ann. § 358-A:10(I);  New
 Jersey: N.J.
Stat. Ann. § 56:8-19; New Mexico:
N.M. Stat. Ann. § 57-12-10(B); New
 York: McKinney=s
Gen. Bus. Law § 349(h); North Carolina:
N.C. Gen. Stat. § 75-16; Ohio:
Ohio rev. Code Ann.  § 1345.09(B); Pennsylvania:
Pa. Stat. Ann. tit. 73, §
201-9.2(a); South Carolina: S.C. Code Ann. § 39-5-140(a); Tennessee:
Tenn. Code Ann. § 47-18-109(a)(3);
Texas: Tex. Bus. & Com. Code § 17.50(b)(1) (depending on
applicable statute year); Vermont:  Vt.  Stat. Ann. tit. 9, § 2461(b); Virginia:  Va.
Code Ann. § 59.1-204(A); Washington: Wash.
Rev. Code Ann. § 19.86.090.





[43]
See, e.g., Arkansas: Ark. Code Ann. § 4-88-204; California:
Cal. Civ. Code § 1780(b); Hawaii:
Haw. Rev. Stat. §
480-13(b)(1);  Indiana: Ind. Code § 24-5-0.5-4(h); Nevada:
Nev. rev. Stat. 598.0977.





[44]
See, e.g., BMW of N. Am., Inc. v. Gore, 516 U.S.
962, 568–69 (1995) (noting that state deceptive trade practices laws are not
uniform); In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1017 (7th
Cir. 2002) (noting that state consumer‑protection laws Avary considerably@).





[45]
See Shutts, 472 U.S.
at 821.





[46]
Schein, 2002 WL 31426407, at *17.





[47]
See, e.g., Ford Motor Co. v. Sheldon,
22 S.W.3d 444, 453–54 (Tex. 2000)
(applying Texas DTPA to suit against out-of-state corporation); Busse v. Pac. Cattle Feeding Fund No. 1, Ltd.,
896 S.W.2d 807, 814 (Tex. App.—Texarkana 1995, writ denied) (applying Texas
DTPA to suit against Iowa resident); see
also Rush v. Barrios, 56 S.W.3d
88, 97 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (stating courts
generally apply substantive law of the state where cause of action arose).  





[48]
See Bridgestone/Firestone, 288 F.3d at 1016.





[49]
Hughes Wood Prods., Inc. v. Wagner,
18 S.W.3d 202, 205 (Tex. 2000); see
Restatement (Second) of Conflict of
Laws §§ 145(1) (tort) & 188(1) (contract) (1971).





[50]
See Hughes Wood, 18 S.W.3d at 205–06.





[51]
Restatement (Second) § 148(1).





[52]
Id. § 148(2).





[53]
Id. cmt. j, at page 448.





[54]
Id. cmt. g, at pages 447– 48.





[55]
Id. cmt. i, at page 448.





[56]
Cf. Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc., 92 S.W.3d 163, 174–75 (Tex.
App.—Houston [14th Dist.] 2002, no
pet. h.) (applying Texas law
regarding unfair bargaining to company that was domiciled and conducted
bargaining in Texas).





[57]
 Restatement
(Second) § 148, cmt. j, at pages 448–49.





[58]
Section 148 so clearly points to the consumer’s location rather than the
manufacturers that one writer calls it “one of the most easily applied tests in
the Restatement.”  See Rory Ryan, Comment, Uncertifiable?: The
Current Status of Nationwide State-Law Class Actions, 54 Baylor L. Rev. 467, 499 (2002)
[hereinafter Uncertifiable?]. 
The section appears to reflect American law generally, as is the
Restatement=s
aim.  See Inacom
Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 688 (8th Cir. 2001)
(applying law of state where plaintiff received, took action on, and suffered
damages from fraudulent concealment); 389
Orange St. Partners v. Arnold, 179 F.3d 656, 662 (9th Cir. 1999) (applying
law of state where claimant signed documents containing misrepresentations and
was to render payment); Trumpet
Vine Invs., N.V., v. Union Capital Partners I, Inc.,
92 F.3d 1110, 1118 (11th Cir.1996) (applying law of state where
misrepresentations and initial acts of reliance occurred); Macurdy v. Sikov & Love, P.A., 894 F.2d 818, 820-21 (6th Cir.
1990) (applying law of state where misrepresentations and reliance occurred); Value
House, Inc. v. MCI Telecomms. Corp., 917 F.Supp. 5, 7 (D.D.C. 1996) (applying law of state where
plaintiffs received negligent misrepresentations and acted in reliance on
them).





[59]
See Restatement (Second) § 148 cmt.
e, at page 447.





[60]
Id. § 6.  





[61]
See Hughes Wood, 18 S.W.3d at 206.





[62]
See Nishika Ltd., 953 S.W.2d at 737 (applying
warranty law of state where negotiations occurred and goods were bought and
made).  Our analysis, of course, might be
very different if Tracker Marine’s contracts included a choice-of-law clause
(which they did not).  See Schein,
2002 WL 31426407, at *16.





[63]
Compare Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 201 (Tex.
1985) (holding manufacturer with substantial sales and office in Texas for
sales, marketing research, and service was subject to personal jurisdiction), with
Am. Type Culture Collection, Inc. v. Coleman, 2002 WL 1433719, at *3, *5
(Tex. 2002) (holding nonresident that set up sales to avoid benefits and
protections of Texas laws was not subject to personal jurisdiction).





[64]
Assuming the class is certified, the ease of applying the law would certainly
be advanced by applying one state=s
law to all 74,000 transactions.  But that
would not be true if individual actions were brought in the courts of all fifty
states, each of which had to determine and apply Missouri
law rather than its own.  The substantive
law that applies cannot be changed merely by employing the procedural device of
a class action.  See Bernal, 22
S.W.3d at 437.





[65]
See Bridgestone/Firestone, 288
F.3d at 1016 (applying Indiana
law).





[66]
Id.





[67]
Cf. U.S. v. Marine Shale Processors,
81 F.3d 1329, 1355 (5th Cir. 1996) (recognizing that allowing each state to set
air quality standards for local businesses would encourage industries to shift
to states with most lenient standards).





[68]
See Tex.  Bus. & Com.  Code § 17.50.





[69]
Nishika Ltd., 953 S.W.2d at 736–37; see also Bridgestone/Firestone,
288 F.3d at 1017 (applying consumer fraud law of state where consumer is
located rather than states with more favorable consumer law).





[70]
194 F.R.D. 206 (E.D.Pa. 2000).





[71]
Id. at 212–18.





[72]
Appellees point out the Austin Court of Appeals
applied Texas law to a nationwide class action in National Western Life Ins. Co. v. Rowe, 86 S.W.3d 285, 298 (Tex. App.—Austin
2002, pet. filed).  That case predates Schein, and may
not survive it.  If it does, we disagree
with our sister court’s Restatement analysis, which we believe incorrectly
de-emphasized the importance of each consumer’s residence by (1) focusing on the
breach of contract claims that require no reliance, even though the class
alleged numerous other claims that do, id.
at 297; and (2) emphasizing where the defendant “maintained” the contracts (Texas)
rather than where the goods were bought and sold (forty other states), id. at 301.





[73]
See Schein, 2002 WL 31426407, at *13.





[74]
See Bridgestone/Firestone, Inc., 288 F.3d at 1015.





[75]
See Schein, 2002
WL 31426407, at *17.





[76]
The plaintiffs in Schein
did not even argue for a nationwide class if the laws of all fifty states applied;
thus, the Court’s conclusion that “[f]or this reason, the plaintiffs have
failed to show that legal issues predominate” may refer to either the lack of
effort or the prolixity of laws.  See Schein,
2002 WL 31426407, at *17; see also Uncertifiable?, supra
note 58, at 477, 501–02 (suggesting adoption of a per se rule against
nationwide class actions involving the laws of all fifty states, as the
possibility of certification is so small and the difficulties in management so
great).





[77]
See Bernal, 22 S.W.3d at 435.





[78]
Boat decks were constructed of plywood dipped in an aqueous sealcoat
from 1987 to 1991, pressure-treated plywood from 1992 to 1995, and aluminum
from 1996 to 1998.





[79]
The class representatives’ interrogatory answers asserted thirty different
misrepresentations, which they now assert fall into four basic categories: the
plywood used in the boats was waterproof (1987–88), made of the highest quality
materials (1987–88, 1992–94), marine panel plywood (1991–93), and would last a
lifetime (1992–93).  They concede there
were no affirmative representations to consumers in 1989–90.





[80]
For example, one of the class representatives bought a 1988 boat based on a
1987 brochure.





[81]
See Castano, 84 F.3d at 745; Sheldon, 22 S.W.3d at 455 (holding need
to inquire into each class member’s state of mind defeated any benefits of
class action)





[82]
See Castano, 84 F.3d at 742
n.15 (5th Cir.1996) (noting states impose varying standards to determine when
there is a duty to disclose).





[83]
See In re Rezulin
Prods. Liability Litigation, 210 F.R.D. 61, 67 (S.D.N.Y. 2002) (questioning
whether product liability suit could be recharacterized
as consumer fraud class action).





[84]
See Uncertifiable?, supra note 58, at
502.  





[85]
Id.
at 477.





[86]
See Castano,
84 F.3d at 745 n.18, 747, 749 (finding court could not know whether common
issues predominate without track record of individual trials).





[87]
See In re Bristol-Myers Squibb Co., 975 S.W.2d 601, 603 (Tex. 1998).





[88]
See Cox v. Zale Del., Inc., 239 F.3d 910, 916
(7th Cir. 2001) (noting that frivolous and nuisance claims are not unusual
“when a class action is in the offing”); Gen.
Motors v. Bloyed, 916 S.W.2d 949,
953, 956 (Tex 1996) (affirming settlement based on coupon most class members
could not use as there was evidence they suffered little injury);
Scott Brister, et al., Texas Pretrial Practice § 6:618 (revised 2002)
(noting class actions, if carried to extreme, may encourage litigation of
trifling matters with little benefit to anyone except counsel).





[89]
Cf. Schein,
2002 WL 31426407, at *18 (finding no evidence consumer claims for defective
software that cost $5,000 would not be brought, given availability of
additional damages and attorney’s fees).





[90]
Id.





[91]
See Siebenmorgen
v. Hertz, No. 14-97-01012-CV, 1999 WL 21299, *1 (Tex. App.—Houston
[14th Dist.] 1999, no pet.) (not designated for publication) (finding
certification moot after jury rejected representative’s claim at individual
trial).





[92]
See Remington Arms Co., v. Luna, 966
S.W.2d 641, 644 (Tex. App.—San Antonio 1998, pet. denied) (affirming denial of
certification as absence of litigation over alleged defect requiring $70 repair
might demonstrate buyers’ lack of interest in claim).





[93]
Tex. Bus.
& Com. Code § 17.50(b), (d).





[94]
See Hughes Wood, 18 S.W.3d at
204–05 (stating that determination of state contacts involves a factual
inquiry); Restatement (Second) of
Conflict of Laws § 148, cmt. j, at pages
448-49 (1971).





[95]
See Bernal, 22 S.W.3d at 435–46
(holding class action cannot unduly restrict presentation of viable claims or
defenses without a party's consent); see
also Tex. Gov’t.
Code § 22.004(a) and Tex. R. Civ.
P. 815 (stating procedural rules may not abridge, enlarge, or modify
substantive rights of a litigant).  





[96]
See Bridgestone/Firestone, 288
F.3d at 1017 (indicating most states would not entertain consumer fraud claim
based on lost economic value due to failure to disclose product’s flaws if
product still operated properly).





[97]
See City of Tyler v. Likes, 962 S.W.2d 489, 500 (Tex.
1997).





[98]
The class representatives’ argument that all plywood on the boats should be
replaced (whether rotted or not) is merely a restatement of their
benefit-of-the-bargain claim, not a claim for cost of necessary repairs.





[99]
See,
e.g., Tex. Bus. & Com. Code §
2.608(b) (requiring revocation of sale
of goods before any substantial change in their condition); Davis v. Estridge,
85 S.W.3d 308, 311 (Tex. App.—Tyler 2001, pet. denied) (requiring tender of
property received and value of benefits derived from possession for equitable
rescission).





[100]
See Arthur Andersen & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 817 (Tex.
1997).





[101]
Because of the conflict, dismissal of either claim might require notice to
class members under Rule 42(e) and indicate a class action is inappropriate (as
it necessitates surrender of substantial rights). See Schein, 2002 WL 31426407, at *14.





[102]
 See
Nat’l W. Life Ins. Co. v. Rowe, 86 S.W.3d 285, 298 (Tex. App.—Austin 2002,
pet. filed).





[103]
See Schein,
2002 WL 31426407 at *14 (holding defendant entitled to cross-examine individual
claimants when amount of damages cannot readily be ascertained,); Bernal,
22 S.W.3d at 437 (finding defendant was entitled to individual determinations
of causation and damages); Becton
Dickinson & Co. v. Usrey, 57 S.W.3d 488, 497
(Tex.App.—Fort Worth 2001, no pet.) (rejecting
procedure using claim forms to support no-evidence summary judgment, and then
severing for de novo trial claims as to which defendant could create fact
question).





[104]
See Tex. R. Civ. P. 42(f).





[105]
See E & V Slack,
Inc. v. Shell Oil Co., 969 S.W.2d 565, 571 (Tex.App.—Austin
1998, no pet.) (holding defendant’s need to discover which class members signed
releases justified denial of certification).





[106]
Schein, 2002 WL 31426407, at *19.